OVERTON, J.
Plaintiff instituted this suit to recover the S. E. % of the N. E. % of section 15, and the S. E. Yk of the N. W. Y, and the S. W. Yk of the N. E. %, and the W. Yz of the N. E. Yi of the S. W. % of section IT, all in township 19, range 11, in the parish of Bossier. He sets out his chain of title, and alleges that neither he nor defendants are in the actual corporeal possession of the property sued for, with the exception of the S. Yz of the N. E. Yk of section 15, which part plaintiff alleges that one of defendants’ authors in title has leased to several persons to enable them to develop it for oil, and that the lessees are now engaged in extracting oil from that part of the tract. Plaintiff also alleges that in the year 1892, the sheriff and ex officio tax collector of Bossier parish made a tax sale of the property sued for, as property belonging to plaintiff, to one R. B. Poindexter, through whom defendants claim title.. He alleges that this tax sale is null and void for several reasons:
(1) Because said tax deed purports to be based upon an assessment of the property in question made in his (plaintiff’s) name, in the year 1891, when in truth and in fact there was no such assessment, and no assefcsment of any kind against him for that year, and, since there was no assessment against him upon which to base said tax sale, there could not have been, and there was not in fact, a valid tax sale, as the sheriff and tax collector was without authority, in law, to advertise and sell said property, as assessed, *830 when there was no assessment in the name of plaintiff.
(2) Because he (plaintiff) had no notice whatever of any assessment for taxes, or of delinquency in the payment of his taxes, or of the intended tax sale.
Plaintiff then alleges that, in the event it should be held that a certain assessment made in the name of the “Succession of A. H. Hollingsworth,” and reading: “Section 6, less W. Va of N. E. %, S. W. % of N. E. S. E. % of N. W. % ; N. E. ^ of S. W. %, N. % of S. E. %, section 17, and S. y¿ of S. E. %, section 10, and S. % of S. E. section -, township 19, range 11,” is such an assessment as would enable the tax collector to sell the property in the name of plaintiff, then the tax sale made is null and void:
(1) Because the assessment is insufficient to identify the property.
(2) Because the assessment includes land in section 6 that did not belong to either plaintiff or the succession of A. H. Hollingsworth at the time the assessment was made, or at the time of the tax sale, but to other parties to whom said land in section 6 was also assessed for said year; that the inclusion of said land in.section 6 in said assessment brought about a dual assessment; that the taxes on the part thus doubly assessed for said year were paid by other persons before the tax sale in question was made.
(3) Because the land in controversy was assessed confusedly with other property, to wit, with property belonging to B. E. O’Neal, and was sold to pay taxes levied against it under an assessment thus confusedly made.
Then plaintiff makes the following allegation, in argumentative form, from which it appears, among other things, that the sheriff and ex officio tax collector made certain changes in the assessment, which allegation, to quote it, is as follows:
“That if section 16 could be substituted for section 6, and section 15 could be substituted for section-, and the name of G. W. Hollingsworth could be substituted for the succession of A. H. Hollingsworth, by the sheriff and tax collector, all of which is denied, then there was still a dual assessment of part of the land assessed and'-pretended to be sold, which renders the whole absolutely null and void, because there was a dual assessment as to the west half of the northwest quarter of section 16, township 19, range 11, the same having been assessed the same year, 1891, upon the assessment rolls of Bossier parish for that year to B. F. O’Neal, who paid the taxes thereon for said year 1891, before the pretended sale of said property to R. B. Poindexter, all of which rendered Ms tax title absolutely null and void and without force and effect.”
Plaintiff also alleges that he filed suit against the defendants in the United States District Court, on the same cause of action upon which the present suit is based, on April 3, 1922, but that the suit there instituted was dismissed as of nonsuit on December 11, 1922. It may be observed in this connection that his present suit was filed on January 3, 1923, a little more than three weeks after the dismissal of his case in the federal court.
The prayer of the petition is that judgment be rendered against defendants, decreeing the above tax sale to be absolutely null and void, and setting aside ay. subsequent sales and leases affecting said land, and recognizing plaintiff’s title as being superior to that of defendants, and directing that he be placed in possession of said property. He also prays that certain of the defendants, who are in possession, under leases, granted on a part of the property in controversy, be ordered to file a statement of all oil extracted by them from the part so possessed,1 and for judgment against those- defendants for the oil extracted by them, or for its market value.
Defendants filed exceptions ^ of no cause or right of action to plaintiff’^ demand. These exceptions were sustained by the court below, and plaintiff’s demand was accordingly dismissed. Plaintiff has therefore appealed.
*832 As plaintiff has alleged that the property claimed by him was sold at tax sale, after he acquired it, which tax sale, he alleges, is the source of the rights and claims asserted by defendants, and prays that the sale, be annulled, it is necessary, in order for his petition to show a cause of action, that it contain certain allegations, which, if established, will justify the court in decreeing the sale to be null and void, and thereby enable it to recognize his right to the property. Smith v. Krause & Managan Lumber Co., 125 La. 703, 51 South. 693.
Unquestionably, the allegations made by plaintiff are ample to annul the sale, if they should be proven, unless it be that plaintiff has forfeited his right and cause of action by failing to institute suit within the time prescribed by article 233 of the Constitutions of 1898 and 1913, and by section 11 of article 10 of the Constitution of 1921, and unless it be that defendants cannot avail themselves of the provisions of those articles, under exceptions of no cause or right of action, but must necessarily plead them as statutes of prescription.
As to whether or not defendants may avail themselves of the provisions of'the articles mentioned, under exceptions of no cause or right of action, depends, we think, upon whether those articles establish periods of prescription, properly speaking, or whether they establish periods of peremption. If they establish the latter, we see no reason why defendants should not be permitted to avail themselves of the provisions of the articles under exceptions of no cause or right of action.
One of the articles under consideration, to wit, article. 233 of the Constitution of 1898, in so far as it is necessary to quote it, reads as follows:
“No sale of property for taxes shall be set aside for any cause, except on proof of dual assessment, or of payment of the'taxes for which the.property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale,' which notice shall not be served until the time of redemption has expired, or within three years from the adoption of this Constitution, as to sales already made, and within three years from the date of recordation of the tax deed, as to sales made hereafter, if no notice is given. * * * ”
Article 233 of the Constitution of 1913 reads as does article 233 of the Constitution of 1898, except that in all instances the period of three years begins to run from the date of the recordation of the tax deed.
Section 11 of article 10 of the Constitution of 1921, also undqr consideration, reads as follows, in so far as it is necessary to quote it:
“No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption shall have expired and within three years from the date of the recordation of the tax deed, if no notice is given. The fact that taxes were paid on a part of the property sold, prior to the sale thereof, or that part thereof was not subject to taxation, shall not be cause for annulling the sale as to any part thereof on which the taxes for which it was sold were due and unpaid, provided that the provisions hereof shall not affect any pending suit, nor any suit which may be brought within a period of twelve months from the date of the adoption of this Constitution, in which any tax sale is sought to be annulled for any of said causes.”
In Guillory v. Avoyelles Railway Co., 104 La. 11, 28 South. 899, in which there was under consideration Act 106 of 1892, which act gave the right to contest an election held to take the sense of property taxpayers, as to whether taxes should be levied in aid of a railway enterprise, but required that suits to contest such an election be brought within three months after the promulgation of the election, it was said, in discussing the act, that—
*834 “When a statute creates a < right of action, and stipulates the delay within which that right is to be executed, the delay thus fixed is not,, properly speaking, one of prescription, but it is one of peremption.
“Statutes of prescription simply bar the remedy. Statutes of peremption destroy the cause of action itself. That is to say, after the limit of time expires the cause of action no longer exists; it is lost. Taylor v. Coal Co., 94 N. C. 525; Cooper v. Lyons, 9 Lea [Tenn.] 596.”
We think that the articles under consideration should be viewed as establishing periods of peremption rather than of prescription, and therefore as destroying the cause of action by the lapse of time. True the articles themselves do not create a right of action to annul a tax sale, and then require as a condition to the exercise of the right that the action be brought within a specified time, but they do recognize, by necessary implication, the right that one has to annul a tax sale for defects existing in it, and require as a condition precedent to the annulment of the sale that the suit to annul be brought within the time prescribed. It is the inhibition established by the articles, against the annulment of the sale, after the expiration of the period fixed, except for the cause or causes specified in them, that makes the period prescribed in the articles a period of peremption rather than of prescription.
We therefore conclude that, if plaintiff’s petition discloses that the causes of action alleged by him were destroyed by the lapse of time when his suit was filed, his attack upon the tax sale, which sale it is necessary for him to annul in order to succeed in his suit, may be met with an exception of no right or cause of action. Laenger v. Laenger, 138 La. 532, 70 South. 501.
Having so concluded, we shall next consider the various grounds of attack, made by plaintiff, on the sale, which have been all but quoted in the foregoing part of this opinion. In considering them, it will be recalled that plaintiff, at the time of the institution of this suit, was not in the actual possession of the property in contest, and that it does not appear that he ever was; and, furthermore, that no suit was brought to annul the tax sale, which was made in 1892, until 1922. Hence, it cannot be said that plaintiff’s cause of action was preserved because of any possession that he had ’of the property, or because of the time at which he instituted suit.
Taking up for consideration the various grounds of attack made on" the tax sale, the first one is that there was no assessment of the property in the name of plaintiff, and that, as there was no such assessment upon which to base the tax sale, the sale is null and void. While plaintiff makes this allegation as the basis of his first ground of attack, we, however, find, from a succeeding allegation, that there was an assessment of property described in the allegation, in the name of the succession of A. H. Hollingsworth ; and we further find, from a succeeding allegation, that the sheriff and tax collector substituted the name of plaintiff for that of the succession of A. H. Hollingsworth, in the assessment made in the name of the succession, and also substituted in that assessment section 16 for section 6, and section 15 for section -.
The result of the changes made by the sheriff and tax collector was to correct the assessment, and thereby make it correspond to the property' afterwards sold, except perhaps as to the S. E. % of the N. E. % of section 15.
Plaintiff denies, however, that the sheriff and tax Collector had authority to make these changes. In our view, he had ample authority to make them. Section 11 of Act 106 of 1890, which was in force when the sale was made, conveyed the requisite authority, and, in fact, made it the tax collect- or’s duty to make the changes. The pertinent part of the section reads:
*836 “That if any tract or lot of land, or other property, shall he omitted in the assessment of any year or series of years, or m any way erroneously assessed, the same, when discovered, shall be assessed by the assessor or tax collector for the whole period for which the same may have been omitted or improperly assessed, and shall be subject to the state, parish and municipal taxes which have been or may hereafter be assessed against said property in accordance with law,” etc. (Italics ours.)
We therefore conclude that all of the land sold for taxes was assessed, except perhaps the S. E. 14 of the N. E. % of, section 15, the assessment of which will be considered in a moment. Hence, if there was no assessment of the S. E. % of the N. E. 14, the only question that could arise would he: Should the entire sale be annulled, because that part of the land, while unassessed, was sold together with the remaining property, claimed by plaintiff in this suit? We answer the question in the negative. Assuming, however, that the entire sale was null for that reason, when made, still the defect is not one of those preserved as a cause for annulling the sale after the lapse of the period of three years, established by article 233 of the Constitution of 1898 (nearly six years prior to the adoption of which the sale was made and recorded), or by article 233 of the Constitution of 1913, or by section 11 of article 10 of the Constitution of 1921, and hence cannot possibly justify the annulment of the sale with respect to the property assessed.
We now come to the assessment of the S. E. 34 of the N. E. % of section 15. This land does not adjoin the rest of the land involved in this suit, and therefore constitutes an independent tract. In so far as the allegations of the petition disclose, which, for the purposes of this exception, we must accept as true, this fractional part of section 15 was not assessed to the succession of A. H. Hollingsworth, nor did the tax collector, in altering the assessment, include it. In fact, the allegations of plaintiff’s petition, when considered as a whole, lead to no other conclusion than the one that this part of the land, though sold for taxes, was not assessed at all.
When property, not assessed, is sold for taxes, the sale thereof is an absolute nullity, and is not protected by article 233 of the Constitutions of 1898 and 1913, nor by section 11 of article 10 of the Constitution of 1921. It is true that the failure to assess is not preserved in any of these articles, as a cause for annulling the sale after the expiration of the three-year period therein prescribed, but it was held under the Constitutions of 1898 and 1913, and the rulings are pertinent under the Constitution of 1921, that a sale thus made is an absolute nullity, not protected by article 233 of those Constitutions, for the reason that, in such a case, there is no sale which the law or the Constitution considers a tax sale.
In passing on the question, in Mecom v. Graves, 148 La. 369, 86 South. 917, the court said and held:
“If it be assumed that the land in contest was actually sold by the tax collector, the fact that it was not assessed for the taxes for which it was sold would make the sale an absolute nullity, not protected by the prescription of three years. Guillory v. Elms, 126 La. 560, 52 South. 767; Morton v. Xeter Realty Co., 129 La. 775, 56 South. 883; Board of Commissioners v. Concordia Land & Timber Co., 141 La. 247, 74 South. 921.”
And in Guillory v. Elms, 126 La. 560, 52 South. 767, it was said:
“It is true that it has been held by this court more than once that for the purposes of the prescription established by article 233 of the Constitution an assessment may be sufficient though made in the name of a person not the owner of the property, or in the name of one who is dead, or in no name, but, so far as we are at present informed, it has never been held whether for the purpose stated or for any other that in legal contemplation there can be a sale of property for taxes without an assessment. In fact, it is of the essence of such a sale that there should have been an assessment, *838 just as it is the essence of an execution that the executioner should have legal authority for what he does, since otherwise the killing is merely a homicide, and perhaps a murder. No one will pretend that one ordinary citizen can make a ‘sale for taxes’ of the property of another, no matter what he may choose to call it, and a sheriff or tax collector without a writ or warrant, or, in other words, without an assessment and levy, is no more than an ordinary citizen, and his sales without such authority vare not sheriff’s sales, or sales for taxes, but are acts which are better known to the law as ‘torts.’ ”
Hence we conclude that plaintiff’s petition shows, on the ground under consideration, a cause of action, in so far as concerns the S. E. % of the N. E. % of section 15.
The next ground of attack to be considered is that of dual assessment. This ground, as will he recalled, is based: First, upon the allegation that the assessment includes lands in section 6 that belonged neither to plaintiff nor to the succession of A. H. Hollingsworth, but to other parties to whom they were assessed, who paid, prior to the tax sale, the taxes on their lands included in the assessment, and hence that there was a dual assessment and a payment of taxes on part of the lands assessed and sold; and, secondly, that, if the sheriff and tax collector had the right to substitute section 16 for section 6 in the assessment in the name of the succession of A. H. Hollingsworth, and to substitute the name of plaintiff for that succession, which we have held he had a right to do, even then, after such corrections were made, there remained, it is said, a dual assessment as to part of the land sold, to Wit, that part constituting the W. Yz of the N. E. % of section 16; and, that the taxes on that fractional quarter were paid, prior to the sale, by B. F. O’Neal, who was the other party to wI)om the fractional quarter was assessed.
The first ground of attack appears to be directed against the assessment as it stood before the tax collector corrected it. As that official corrected it by substituting lands in section 16 for lands in section 6, no room remains to contend that there was a dual assessment, in any sense, on the first ground urged. Hence, plaintiff’s attack upon that ground has in reality no basis upon which to rest.
In so far as concerns the second ground of attack, above stated, we think that the allegations of the petition show that there was assessed and sold with plaintiff’s property land belonging and assessed to B. F. O’Neal, and that he (O’Neal) paid the taxes on the part belonging to him, prior to the sale, presumably on the assessment in his name. But, even so, the question presents itself whether there was such a dual assessment as to call for the annulment of the sale after the expiration of the three-year period of peremption. The exact question here presented does not appear to have been decided before by this court. True, it has been held, that, when it appears that property of one has been assessed to him, and also in whole or in part to another, and that the taxes have been paid on the second assessment, no matter by whom, and that the property, notwithstanding the payment, is sold under the assessment in the name of the actual owner, the sale is null, and the defect not cured by the constitutional limitation of three years. Eivers’ Heirs v. Rankin’s Heirs, 150 La. 4, 90 South. 419. However, in the Eivers Case, there was a dual assessment of a part of the property claimed by the plaintiffs, of which they were owners at the time of the sale, and payment by third p'ersons of the taxes, on the part assessed to them; whereas, in the case at bar, it nowhere appears that, at the time of the tax sale, plaintiff was the owner of the fractional quarter that was assessed to O’Neal and also to plaintiff, and upon which O’Neal had paid the taxes, and, as pleadings are strictly construed against the pleader, the presumption is that plaintiff was not the owner. Therefore, in so far as ap *840 pears plaintiff was not the owner of the fractional quarter that was assessed to both him and O’Neal; and, in so far as appears, it was not plaintiff’s property that was dually as-sessed, but the property of a third person. In our view, the provision in article 233 of the Constitutions of 1898 and 1913 pertaining to the annuhnent of tax sales, after the expiration of the period of .three years therein fixed, on the ground of dual assessment, relates, and has reference, only to the dual assessment of property claimed by and belonging to the debtor at the time of the tax sale.
The inclusion of the property of a third person, in plaintiff’s assessment, it is true, gave plaintiff ground to annul the sale before the expiration of the three-year period, because his property was assessed and sold confusfedly with the property of another; but the assessment was not a dual assessment as to him, but amounted only to including in his assessment, property that did not belong to him.
The next ground of attack to be considered is that the assessment made in the name of the succession of A. H. Hollingsworth is too vague, and is insufficient to identify the property assessed, and therefore that the tax sale is null and void.
We have seen that the tax collector, before making the sale, corrected the assessment. After he corrected it, tire assessment was sufficiently certain and specific to identify the property, which is all that the law requires in that respect.
The next grounds of attack are that plaintiff was given no notice of assessment, or of delinquency in the payment of his taxes, or of the intentiqn to sell the property should he not pay.
Granting, for the purposes of this ease, that the failure to give notice of assessment was sufficient to annul the sale, when made, which may be doubted, still that defect, as well as the failure to give notice of delinquency and of intention to sell, wad cured by the constitutional limitation of three years. Hart Land & Improvement Co. v. Kelly’s Heirs, 145 La. 349, 82 South. 366.
The remaining ground of attack is that the property in controversy was assessed and sold confusedly with property belonging to B. F. O’Neal.
That ground is not one of the causes for which a tax sale may be annulled, after the expiration of the period of three years fixed by the Constitution of 1898, or, for that matter, after the lapse of the similar period fixed by the Constitutions of 1913 and 1921, and hence cannot avail plaintiff as a cause for annulling the sale.
In our view, since the tax sale in question was made prior to the adoption of the Constitution, of 1898, plaintiff's cause of action, by virtue of article 233 of that instrument, ceased to exist, with the exception noted, three years after the adoption of that Constitution, and was not revived, if it could have been, by the Constitution of 1913, or by that of 1921.
Before closing this opinion, it will be necessary to consider, to some extent at least, a proviso contained in section 11 of article 10 of the Constitution of 1921, which proviso has been fully discussed by plaintiff and defendants.
It will be recalled that the section referred to, after providing that no tax sale shall be annulled for any cause except for the prior payment of taxes, unless the proceeding to annul id instituted within three years from the date of the recordation of the tax deed, when notice of sale has not been given, reads, to quote a part of the section again:
“The fact that taxes were paid on a part of the property sold, prior to the sale thereof, or that part thereof was not subject to taxation, shall not be cause for annulling the sale as to any part thereof on which the taxes for which it was sold were due and unpaid, provided that the provisions hereof shall not'affect any pend *842 ing suit, nor any suit which may he brought within.a period of twelve months from the date of the adoption of, this Constitution, in which any tax sale is sought to be annulled for any of said causes.”
The section of the Constitution under consideration limits the causes for which a tax sale may be annulled, after the expiration of the three years delay, to a greater degree than do the Constitutions of 1898 and 1913. As the causes for annulment were about to be limited to a greater extent than before, it became necessary to provide that the limitation, in so far as it would exceed that which existed before, should not affect pending suits, and to make provision for causes of action, existing at the time of the adoption of the Constitution, which otherwise might be defeated without giving the possessor of the cause of action an opportunity to bring suit to annul. Hence the constitutional convention, in order to guard against the destruction of one’s cause of action, by the greater limitation about to be made, provided, in substance, that the limitation should not affect any pending suit, or any suit brought within twelve months after the adoption of the Constitution. Such is the purpose of the proviso. Its purpose is not to revive a cause of action that had been lost or forfeited, nor, without giving a reasonable opportunity to bring suit, to destroy a cause of action existing at the time of the adoption of the Constitution.
Plaintiff first filed suit in the United States District Court, on the cause of action set forth in this case. The suit in that court was filed during the 12 months’ delay provided in the foregoing section of the Constitution. Plaintiff was nonsuited in the federal court, after the expiration of the 12 months’ delay.
In approximately three weeks after his case was dismissed, as of nonsuit, plaintiff instituted this suit.
Defendants contend that, as the delay established in the above proviso is a delay of peremption and not of prescription, and as the ordinary rules governing the interruption of prescription do not apply to peremptions, the present suit was filed too late, and for that reason should be dismissed.
In our opinion, the above delay is one of peremption and not of prescription. As the delay is one of peremption, the ordinary rules governing the interruption of prescription do' not apply. Meyer v. Moss, 110 La. 139, 31 South. 332. However, we are not of the opinion that it necessarily follows that plaintiff’s suit should, for that reason, be dismissed. To the contrary, we think, when it appears that one has exercised his right to sue within the 12 months’ period, but was so unfortunate as to have been non-suited after the lapse of the period, and it appears that he has reinstituted his suit, though in another court, within a reasonable time after the nonsuit, that the second suit, within the purview of the proviso, is timely. It was not intended by the proviso that, if one has a cause of action, he should be deprived of it, under such circumstances.
Hence the peremption pf 12 months cannot be sustained.
For the reasons assigned, it is .ordered, adjudged, and decreed that the judgment appealed from, in so fax1' as it sustains the exception of no cause, of action, as relates to the attack on said S. B. ]4-of the N. E. % of section 15, and in so far as it overrules the prayer of plaintiff’s petition for an accounting for all oil extracted from said S. E. be annulled, avoided, and set aside, and it is now ordered and decreed that said exception of no right or cause of action be overruled to that extent, and that this case be remanded to the lower court for the purpose of determining whether or not said S. E. % was duly assessed prior to said sale, and to determine the validity 'of said sale in respect thereto, and to determine whether plaintiff is entitled to said accounting, and, if so, to order the *844 same, and to render such judgment as may be proper under the law in respect to said matter, and, in all other respects, it is ordered that said judgment be affirmed; the costs of appeal to be paid by defendants, and those of the lower court to abide the final determination of the case.
Rehearing refused by Division B, composed of DAWKINS, LAND, and LECHE, JJ.