72 So.2d 500

**THURMON   v.   HOGG et al.**

No. 40837.

March 22, 1954.

Rehearing Denied April 26, 1954.

Dhu and Lea S. Thompson, Monroe, for plaintiff-appellant.

McBride & Goff, Ruston, defendants-appellees.

MOISE, Justice.

This is an appeal from a judgment of the district court in favor of Mrs Alma Colvin Hogg, Tay H. Hogg, George B. Hogg, Mrs. Shirley Fuller, George Simonton and Anna Dora Simonton, rejecting plaintiff's demands at his cost, and recognizing the defendants to be the owners of all that part of NE¼ of SW¼ of Section 4, Township 19 North, Range 2 West, North and West of Cypress Creek, Lincoln Parish, Louisiana, in the proportions set forth in the judgment rendered.

The evidence in this case comprises 750 pages of the transcript. We find that our learned brother below was ingenious in the development of the pertinent facts, and exercised a dramatic fullness of particulars in pointing out the controlling decisions applicable to this litigation. Therefore, we will adopt, as our own, the major part of his reasons for judgment.

"Background to this numbered suit is as follows:

"Previously these defendants, Mrs. Alma Colvin Hogg, et al., instituted an action in jacitation in this Court against Dr. John W. Thurmon alleging that they, Mrs. Alma Colvin Hogg, and the heirs of George D. Hogg, were in physical possession of

the described property, and that Dr. John W. Thurmon was slandering their title.

.. "Judgment was rendered by this District Court in favor of Mrs. Alma Colvin Hogg, and the other parties plaintiff in that suit, and against Dr. John W. Thurmon, ordering that Dr. John W. Thurmon assert his claim to the described land within sixty (60) days from the date of the judgment, March 1, 1951, or be forever barred from ever asserting any claim to the property.

■■■■ "Mrs. Alma Colvin Hogg et al. in this suit excepted to the petition and demand of Dr. John W. Thurmon upon the ground that the petition did not allege that Mrs. Alma Colvin Hogg and the heirs of George D. Hogg were in possession of the land and that, therefore, the petition and demand of Dr. John W. Thurmon must be dismissed for the reason that that averment is a necessary allegation to be made by plaintiff in a petitory action. Such, of course, is the law; however, Dr. John W. Thurmon instituted this petitory action pursuant to the judgment in the jacitation action wherein the Court considered the issue of possession settled by judgment in that suit and overruled the exceptions to the petition of Dr. John W. Thurmon in the petitory action.

"Plaintiff, Dr. John W. Thurmon, bases his claim to title upon:

"1. Severance of title from the public domain by patent.

"2. A partition deed executed by W. F. Brock and others dated February 26, 1917, Conveyance Book DD, Page 40, wherein the parties to that partition deed, as heirs of F. M. McElduff, in dividing property, conveyed to W. H. McElduff property which included the Northeast Quarter of Southwest Quarter (NE¼ of SW¼), Section 4, Township 19 North, Range 2 West.

"3. Tax deed dated June 28, 1930, Conveyance Book 1, page 617, by the Tax Collector for Lincoln Parish, Louisiana, to R. R. Hightower, upon an assessment made in the name of *W. H. McElduff Estate* for 1929 taxes, covering property which included Northeast Quarter of Southwest Quarter (NE¼ of SW¼), Section 4, Township 19 North, Range 2 West.

"4. Deed by R. R. Hightower to J. W. Thurmon, dated October 11, 1933, Conveyance Book 5, Page 535, covering Northeast Quarter of Southwest Quarter (NE¼ of SW¼), Section 4, Township 19 North, Range 2 West.

"Plaintiff pleaded the prescription and peremption of three and five years provided by the Constitution and law of Louisiana. Plaintiff also pleaded the acquirandi cause prescription of ten years.

"Defendants oppose plaintiff's claim to title by:

"1. Severance of title from the public domain by certificate of patent.

"2. Deed dated May 15, 1874, Conveyance Book E, Page 362, from L. G. Kirkland to F. M. McElduff, covering Southwest Quarter of Southeast Quarter and Southwest Quarter (SW¼ of SE¼ and SW¼) of Section 4, Township 19 North, Range 2 West, Lincoln Parish, Louisiana, to which W. H. McElduff was a witness and made proof of signatures on December 10, 1881. Notation on the record of that instrument is 'Original delivered to W. H. McElduff, December 10, 1881, A. J. Bell, Dy. CDC'.

"3. Deed from F. McElduff (F. M. McElduff) to J. A. Colvin, dated November 29, 1878, Conveyance Book D. Page 206, by which F. M. McElduff conveyed to J. A. Colvin land in Lincoln Parish, Louisiana, described as follows: 

"All of Section Four (4) that lies North of the Cypress Creek containing about twelve acres (12), more or less, upon which instrument W. H. McElduff was a witness. No township and range is disclosed by the deed. The deed from L. G. Kirkland to F. M. McElduff, dated May 15, 1874, has written upon it at the bottom of the deed the following, to-wit:

"There is twelve acres more or less that lies North the Cypress Creek in Section 4, sold to John A. Colvin November 29, 1878".
W. H. McElduff was a witness to the deed by F. M. McElduff to J. A. Colvin wherein the township and range were omitted. W.

H. McElduff was also a witness to the deed from L. G. Kirkland to F. M. McElduff upon which there was written the quoted language above, which discloses that the land was in Township 19 North, Range 2 West, as the deed upon which the quoted language was written covers property in Section 4, Township 19 North, Range 2 West. The original deed was delivered to W. H. McElduff.

"All those circumstances disclose that the land conveyed by F. M. McElduff to J. A. Colvin was in Township 19 North, Range 2 West.

"Additionally, W. H. McElduff was one of the parties to a deed executed in 1913, Conveyance Book Z, Page 353, wherein persons styled themselves to be the sole heirs of F. M. and Alice McElduff, and recognized that the land sold to J. A. Colvin was in Section 4, Township 19 North, Range 2 West, for the reason that in excepting property from the effects of the deed recorded in Book Z at page 353, reference was made to land in Section 4, Township 19 North, Range 2 West sold to J. A. Colvin.

"The testimony by the Clerk of Court discloses that F. M. McElduff never acquired any land in any Section 4 in Lincoln Parish other than Section 4 in Township 19 North, Range 2 West.

"4. Act of conveyance by J. A. Colvin to T. B. Colvin dated January 14, 1889,

Conveyance Book I, Page 263, conveying property which included

"N½ of SE¼ and SE¼ of NE¼ Section 5. S½ of NW¼ of Section 4, Township Nineteen, Range 2 West, containing two hundred acres, more or less. All of the Sec. 4 that lies North of the Cypress Creek, Township nineteen, Range 2 West, about twelve acres, more or less.

and

"E½ of SW¼ of NE¼ of Section 5, Township 19, Range 2 West, containing 232 acres more or less.

"5. Deed dated January 23, 1903, Conveyance Book S, Page 368, by T. B. Colvin to George D. Hogg, covering

"S½ of NW¼ & 12 acres North of Cypress Creek in Northwest corner of NW¼ of SW¼ of Sec. 4, E½ of SE¼ & SE¼ of NE¼, NW¼ of SE¼ & E½ of SW¼ of SE¼ of Sec. 5, T. 19 N. R. 2 W.

There were two correction deeds relating to that act of Conveyance, the first dated December 31, 1907, Conveyance Book W, page 72, by and between T. B. Colvin and G. D. Hogg, whereby the description was corrected to read as follows:

"S½ of NW¼ & 12 acres North of Cypress Creek in NW corner of NW¼ of SW¼, Section 4, and N½ of SE¼ & SE¼ of NE¼ & E½ of SW¼ of NE¼, Sec. 5, all in T. 19 N., R 2

West, containing 232 acres, more or less,

and the second dated March 5, 1937, Conveyance Book 10, page 474, by and between Mrs. Eva Smith, the sole heir of T. B. Colvin and his wife, Hattie Mitchell Colvin, and G. D. Hogg, whereby the deed, as amended, was further corrected so as to include

"All of Section Four (4), Twp. 19 N., R. 2 West, lying and being North of Cypress Creek, formerly owned by T. B. Colvin, having been purchased from J. A. Colvin under date of Jan. 14, 1889.

"Defendants also plead the acquisitive prescription of ten and thirty years.

"The parties litigate claim under the respective chains of title above outlined.

"The cause for the conflicting chains of title was the inclusion in the partition deed dated February 26, 1917, Conveyance Book DD, Page 40, wherein the heirs of F. M. McElduff included the entire

"Northeast Quarter of Southwest Quarter (NE¼ of SW¼), Section 4, Township 19 North, Range 2 West,

which by the partition deed was conveyed to W. H. McElduff when, as a matter of fact, all of that part of the

"Northeast Quarter of Southwest Quarter (NE¼ of SW¼) of Section 4, Township 19 North, Range 2 West lying North of Cypress Creek

had been previously conveyed by F. M. McElduff to J. A. Colvin upon which deed W. H. McElduff, the recipient in the partition deed, had been a witness.

"W. H. McElduff was also a witness on the deed from L. G. Kirkland to F. M. McElduff making reference to the land in Section 4, lying North of Cypress Creek, having been sold to J. A. Colvin.

"The heirs of F. M. McElduff in partitioning property included that which had been previously sold by F. M. McElduff.

"The facts disclose F. M. McElduff to be the common ancestor in title of plaintiff and defendants.

■ "Plaintiff, Dr. John W. Thurmon, in this petitory action must recover, if at all, upon the strength of his own title, and not on the weakness of the title of the defendants. He relies upon the tax sale to R. R. Hightower from whom he acquired, upon an assessment to W. H. McElduff Estate wherein the entire 40-acre tract was sold to R. R. Hightower. That tax deed is attacked by defendants in this petitory action because:

"1. (a) The property was assessed to W. H. McElduff *Estate,*

"(b) That the property was assessed to a dead man, and

"(c) No notice of the delinquency was made upon anyone, and

"2. R. R. Hightower, Tax Assessor for Lincoln Parish, Louisiana, purported to purchase the property at tax sale in violation of Àct 94 of 1902 [LSA–R.S. 47:2194] which provides as follows:

"It shall be unlawful for any sheriff, tax collector or their deputies, or any other officer, state, municipal or parochial, whose duties are to assess or collect taxes of any nature whatsoever, for the state, parish or municipality, to buy directly or indirectly, any property sold or offered for sale, for taxes; and any sale of such property to said officer shall be null and void".

"Plaintiff in the petitory action relies upon Article 10, Section 11 of the Constitution of Louisiana as follows:

"'No sale of property for taxes shall be set aside for any cause except on proof of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption shall have expired and within five years from the date of the recordation of the tax deed, if no notice is given'".

"Much of the record refers to the possession of the property by G. D. Hogg, by his widow and heirs since his death, and

by their predecessors, John A. Colvin and T. B. Colvin.

"Sometime between 1878 and 1889, J. A. Colvin built his residence on the S½ of NE¼, Section 5, Township 19, North, Range 2 West and during his possession, but prior to 1889, fences were constructed as hereinafter described, the fence being kept up and in use during the possession of T. B. Colvin and G. D. Hogg, his widow and heirs.

"Near the Southwest corner of the North Half of Southwest Quarter, Section 4, Township 19 North, Range 2 West, the road known as the Unionville-Mineral Springs Road crosses Cypress Creek, which creek from that point runs in a generally northeasterly direction across the North Half of Southwest Quarter of Sec. 4. These fences, the evidence discloses, began at the creek near the bridge, or the SW corner of N½ of SW¼, Sec. 4, Twp. 19 N., R. 2 West. The fence continued on the North side of the road running generally Northwesterly across the N½ of SE¼ and S½ of NE¼, Sec. 5, to the residence of said J. A. Colvin and on West to the West boundary line of S½ of NE¼ of Sec. 5, then North along the West line of the S½ of NE¼ of Sec. 5 to, or near, the North boundary of that 80-acre tract and then on East to Cypress Creek. Later, the tram road of the Dubach Mill Co. was built from the North, intersecting said fence at or near the NE corner of S½ of NW¼ of Sec. 4 and con-

tinuing on South and crossing Cypress Creek near the center of Sec. 4. After the tram road was built, a fence was built south along the West side of said tram road, crossing under said tram road and continuing South along the East side of said tram road to Cypress Creek at or near the tram trestle. A fence was built from a point where said fence along the North boundary of said 80-acre tract reached said tram, to the Southwest, in an arc, turning back to the Southeast before reaching a fence that ran just North of the North line of N½ of SW¼ of Sec. 4, and to the Southeast to a point at or near the trestle. This fence, along its Southeastern course, was destroyed some four or five years ago by the building of a pipe line, although evidences of it remain. A cross-fence began near the J. A. Colvin residence in S½ of NE¼ of Sec. 5, and ran eastward across the SE¼ of NE¼ of Sec. 5 and the S½ of NW¼ of Sec. 4 and on to Cypress Creek. Later, another cross-fence was built from this fence to the South and on to the Creek, being located near the East line of NE¼ of SW¼ of Sec. 4.

"The evidence discloses that a field was cultivated for many years in NE¼ of SE¼ of Sec. 5 and in NW¼ of SW¼ of Sec. 4; that a field was cultivated generally as a sugar cane field in NE¼ of SW¼ of Sec. 4. The fences surrounding these fields, and especially the first field mentioned, and the field to the North made

a lane for the passage of cattle from the residence to that part of N½ of SW¼ of said Sec. 4, North of the Creek. That portion of these two 40-acre tracts lying North of the Creek not in cultivation, was enclosed by fence on three sides and by the creek on the South, and was used by J. A. Colvin and T. B. Colvin, and afterwards by the Hoggs, for a pasture for their cattle, which use, was open, public and well known.

"The evidence shows that the creek banks were used generally as the inclosure on the South side. At such places where cattle might get across the creek, tree tops and brush was placed in some of the bends of the creek to keep the cattle from passing out of the pasture and to the South of the creek. Later wire fencing was stretched by the Hoggs across some of the low places in the creek banks.

"The evidence discloses that Mr. Hogg had physical and corporeal possession of the N½ of SW¼ of Section 4, Township 19 North, Range 2 West, North of Cypress Creek, from the date of his deed of January 23, 1903, until his death on June 3, 1949, and that that possession has continued in his widow, and heirs, since that date; that prior to the possession of Mr. Hogg, that J. A. Colvin and T. B. Colvin were in physical and actual possession of that land. J. A. Colvin went into physical and corporeal possession of this property soon after the deed of November 29, 1878,

and this physical possession continued in T. B. Colvin and G. D. Hogg, since that time to the present. The possession of each was actual, open and notorious and uninterrupted.

"Counsel for plaintiff asserts that George Hogg did not have any title to the land involved in the litigation when the tax sale was made in 1930, predicating that assertion upon the statement that

"A person claiming land by possession of thirty years without title cannot tack his predecessor's possession to his own to make out the thirty years possession necessary and essential to claim of ownership".

That law is subject to exceptions.

"Merritt v. Smith [La.App.], 35 So.2d 817 [819]

"For the purpose of claiming land under the prescription of 30 years, several successive possessors cannot be joined to show a continuous adverse possession, *unless* there is a privity of estate or contract between the occupants".

"Beam v. Dudding, [La.App.], 43 So.2d 73 [74]

"It is well established in our jurisprudence that for the purpose of claiming land under the prescription of thirty years, several successive possessors cannot be joined to show a continuous adverse pos-

session *unless* there is a privity of estate or contract between the occupants. The reason for this rule is that the several acts of adverse possession are construed as nothing more than a series of independent trespasses and on the termination of each of those acts possession returns by the operation of law *to the right-owner of the immovable.*"

"There was privity of estate and contract between F. M. McElduff and J. A. Colvin by virtue of the deed dated November 29, 1878, Conveyance Book D, Page 205, covering

"All of Section 4 that lies North of the Cypress Creek, containing about 12 acres, more or less",

which land description was interpreted by F. M. McElduff and by W. H. McElduff, a witness to the deed, as covering property in Township 19 North, Range 2 West, by the notation on the deed from L. G. Kirkland to F. M. McElduff, which notation was dated the same day as the date of the deed from F. M. McElduff to J. A. Colvin, and, additionally interpreted by W. H. McElduff and the other heirs of F. M. and Alice McElduff to cover land in Township 19 North, Range 2 West by reference in the deed recorded in Conveyance Book Z, page 353 and identified as "Defendant 8".

· "There is privity of estate and contract between J. A. Colvin and T. B. Colvin by the deed dated January 14, 1889, Conveyance Book I, Page 263, covering land which included

"All of the Section 4 that lies North of the Cypress Creek, Township 19 North, Range 2 West, about 12 acres, more or less."

There is privity of contract between T. B. Colvin and George D. Hogg by the deed dated January 23, 1903, Conveyance Book S, Page 369, covering land which included property therein described as

"twelve acres North of Cypress Creek in Northwest corner of NW¼ of SW¼ of Section 4 * * * Township 19 North, Range 2 West",

as corrected by correction deed between T. B. Colvin and George D. Hogg dated December 31, 1907, Conveyance Book W, Page 72, wherein the description was corrected in part, and correction deed between G. D. Hogg and Mrs. Eva Smith, who was the sole heir of T. B. Colvin and Hattie Mitchell Colvin, his wife, dated March 5, 1937, Conveyance Book 10, Page 474, correcting the land descriptions in the two prior instruments so as to disclose that the prior deeds should have covered

"All of Section 4, Township 19 North, Range 2 West lying and being North of Cypress Creek, formerly owned by T. B. Colvin, having been purchased from J. A. Colvin under date of January 14, 1889".

The evidence discloses that it was the intent of the parties to the 1903 act of conveyance to cover and include the land

last above described. At any time after the execution of the deed from T. B. Colvin to George D. Hogg, dated January 23, 1903, George D. Hogg had a right and cause of action against T. B. Colvin to have the land description corrected so as to cover and include the land last above described.

"There was privity of contract between those contracting parties relative to the land last above described. The description used in the 1903 deed by T. B. Colvin to George D. Hogg was intended to cover the property last above described and while it was not entirely accurate, it did refer to land North of Cypress Creek in Section 4, Township 19 North, Range 2 West. The subsequent instruments disclose the intent of the parties.

"The cases examined where one possessor was not permitted to tack on to the prior possession of another do not disclose any contractual relationship between the possessors relating to the involved land.

"As the organ of the Court in Beam v. Dudding [La.App.], 43 So.2d page 73, said:

" 'The reason for this rule is that the several acts of adverse possession are construed as nothing more than a series of independent trespasses and on the termination of each of those acts, possession returns by the operation of law to the rightful owner of the immovable.'

"The occupancy and possession of T. B. Colvin and of George D. Hogg cannot be said to be a series of independent trespasses for the very obvious reason that they possessed under deeds, the description in the deed to Hogg not being artistically drawn, yet a right and cause of action existed in favor of Hogg for the reformation and correction of the land description.

"Additionally, when the Court said that at the termination of each of the acts of possession that possession returned *to the rightful owner* of the immovable, it is easily determined that the possession of George D. Hogg and his authors in title, and the prior possessors of the involved land, does not fall within that language, for the reason that if possession returned *to the rightful owner,* the rightful owner was the author in title who was obligated *to correct the land description* either by correction deed or against whom a cause and right of action existed to reform and correct the land description, which obligation was in favor of George D. Hogg, the last vendee in the chain of title, and in favor of whom the correction deed was actually executed.

"Ford v. Ford [La.App.] 34 So.2d 301 [304]

" 'The Court pointed out that in the Harang case [Harang v. Golden Ranch Land & Drainage Co., 143 La. 982, 79 So. 768] it had also approved the definition of the word "privity" as

used in this connection which is given in 1 R.C.L. at page 178 as follows: "Between Whom Privity Exists.— Privity denotes merely a succession of relationship to the same thing, whether created by deed or by other act, or by operation of law. If one, by agreement, surrenders his possession to another, and the acts of the parties are such that the two possessions actually connect, the latter commencing at or before the time the former ends, leaving no interval for the constructive possession of the true owner to intervene, such two possessions are blended into one, and the limitation period upon the right of such owner to reclaim the land is thereby continued; indeed, the purpose of a continuous possession is the continuous ouster of the owner." See also 1 American Jurisprudence p. 880.'

"In the case styled Buckley v. Catlett, 203 La. 54, 13 So.2d 384, the defendant sought to assert title to the involved property by the acquisitive prescription of thirty years by tacking on to his possession prior possessors of the property in dispute. Neither the deed to Catlett nor to any of the persons whose possession Catlett sought to use in establishing the thirty years possession described, *or referred to in any manner whatsoever,* the involved property. To the contrary is the case at bar.

"The deed to Hogg in 1903 referred to property in Section 4, North of Cypress Creek, the description being subject to some ambiguity, but the description was corrected by correction deeds disclosing the property intended to be affected and covered by the 1903 deed to Hogg.

■ "There was privity between Hogg and his authors in title and prior possessors of the property in litigation, sufficient upon which to establish title in George D. Hogg by the acquisitive prescription of thirty years prior to the date of the tax sale.

\*     \*     \*     \*     \*     \*

■ "The jurisprudence discloses that this" constitutional "prescription or peremption does not run when the owner at the time of the sale continues to remain in actual possession of the property, for his remaining in possession is a protest against the tax title and relieves him of the duty of going out to seek his adversary to attack him. \* \* \*"

"Counsel for plaintiff in this petitory action cites law having to do with the constitutional peremption. We will refer to them.

"We find the case of Kivlen v. Horvath, 163 La. 901, 113 So. 140 [142], that the Supreme Court held that the prescription or peremption was not applicable where the owner remained in actual possession of the property. Quotation from that case is as follows:

" 'However, the evidence clearly shows that the owner was given no

notice whatever of delinquency or of the intention to sell. In fact, the inference may be fairly drawn from the record that, if notice was given to any one prior to the sale, it was served on the Security Building & Loan Association, in whose name the property was erroneously assessed. Therefore the tax sale is clearly null and void and should be so decreed, unless the attack upon it on this ground is barred by the prescription of three years, which defendant has pleaded against the attack, under article 233 of the Constitution of 1913, and under section 11 of article 10 of the Constitution of 1921.

" 'The prescription or pre-emption pleaded is not applicable, and hence is of no benefit to the tax purchaser or to those to whom he has sold, when the owner at the time of the sale continues to remain in actual possession of the property, for his remaining in possession is a protest against the tax title and relieves him of the duty of going out to seek his adversary to attack him. Carey v. Cagney, 109 La. 77, 33 So. 89; In re Seim, 111 La. 554, 562, 35 So. 744; Bartley v. Sallier, 118 La. 93, 42 So. 657; Head v. Howcott Land Co., Limited, 119 La. 331, 44 So. 117; Adsit v. Park, 144 La. 934, 81 So. 430. And likewise the prescription or pre-emption is not applicable, for the reason stated above, where, although the owner at the time of the sale was not in actual possession of the property, still either he or one who holds from him by a regular chain of conveyances peacefully takes possession of the property, before the required three years have elapsed, and holds possession thereof until he attacks the sale. * * *

" 'Therefore plaintiff took possession of the property adversely to the tax sale before the prescription of three years accrued, and has maintained that possession. Hence the prescription of three years pleaded has not the effect of barring plaintiff's demand.' "

"Similarly we find in the case of Pierson v. Castell Land & Harbor Company, Inc., 159 La. 158, 105 So. 274 [277], the following:

" 'It is scarcely necessary to repeat what this court has so often taken occasion to announce, that since the Constitution of 1879 and the succeeding ones, where there has been an assessment of land and a tax sale is made which describes the land in such a manner that it can be reasonably identified, the peremption of three years provided for by the Constitution applies, and the tax title is not subject to attack thereafter, *except on the two grounds stated, or where the tax debtor, tax delinquent, or owner* has remained in possession of the property after the said tax sale.' "

"Plaintiff refers the Court to Close v. Rowan, 171 La. 263, 269, 130 So. 350 [352], wherein the peremption provided by the Constitution was successfully plead against a tax sale to a Deputy Tax Assessor. The case is readily distinguished from the case at bar. We quote from Close v. Rowan:

" 'The sale in the present case was duly recorded in the conveyance records in 1904. *Plaintiffs or, so far as appears, those through whom they hold, have not had actual possession of the property since the tax sale.* Therefore, such grounds of attack as the property was not assessed in the names of the owners, but in the names of others, not the owners; as no notice of delinquency or intention to sell was ever given the owners; as the tax roll in the clerk's office contained no description of the property that was sold at tax sale; as the advertisement of sale was at variance with the assessment and with the description contained in the tax sale; as the sale is null and void, because Littell, one of the tax sale purchasers, was a deputy assessor at the time of the assessment and sale and took part in making the assessment, a deputy assessor being prohibited by Act No. 94 of 1902 [LSA–R.S. 47:2194] from buying property at tax sale; and as the property was sold at tax sale for less than the taxes due thereon—all of which grounds are pleaded by plaintiff

against the tax sale, as shown above, fall before the peremption of three years, under section 11 of article 10 of the Constitution of 1921'."

"The distinguishing feature between Close v. Rowan and the case at bar is the fact that in the Close v. Rowan case,

" 'Plaintiffs or, so far as appears, those through whom they hold, have not had actual possession of the property since the tax sale.' "

"Meshell v. Bauer, 215 La. 619, 41 So.2d 237 [239], is cited by counsel for plaintiff as holding that,

" 'ownership under a plea of thirty years prescription could not be asserted against a tax sale made in the name of the record owner' ".

That case is not in point in the involved litigation for the very apparent reason that in that case plaintiff

" 'does not therein, nor in the petition, assail the efficacy of the tax deed to Bauer *nor offer any reason why it should not be given the force and effect that instruments of that character, under the Constitution and Laws of this State, are entitled. In the absence of direct attack upon the tax deed, we assume that no valid ground exists therefor.*' "

" * * * The holding in the Meshell v. Bauer case is to the effect that a *valid* tax sale made in the name of the record owner places in the tax purchaser a superior title.

to one claiming by virtue of thirty years acquisitive prescription.

\*    \*    \*    \*    \*    \*

"A salient point in considering the constitutional peremption relative to tax sales is *whether or not the peremption provided has commenced to run.* The cases are uniform in holding that the peremption does not run so long as the owner of the property sold at tax sale remains in corporeal possession.

"The *plaintiff* in the Close v. Rowan case, 171 La. 263, 130 So. 350 [352] (cited by plaintiff), who *sought to have the tax sale declared invalid was not in possession* of the property sold at the tax sale.

"'Plaintiffs or, so far as appears, those through whom they hold, have not had actual possession of the property since the tax sale.'"

Plaintiff cites Hollingsworth v. Schanland, 155 La. 825 [99 So. 613]; Marque v. Kolwe, 5 La.App. 541; Progressive Realty Company, Inc. v. Levenberg [177 La. 749] 149 So. 444, to the effect that the failure to give notice of delinquency and intention to sell for unpaid taxes was cured by the peremption provided in Article 10, Section 11 of the Constitution. Neither of those cases is in point from the factual situation.

"In the Hollingsworth v. Schanland case, plaintiff was the tax debtor and sought to have that tax sale decreed invalid.

"'He sets out his chain of title and alleges that neither he nor defendants are in the actual corporeal possession of the property sued for, with the exception of the S½ of NE¼ of section 15, which part plaintiff alleges that one of defendants' authors in title has leased to several persons to enable them to develop it for oil, and that the lessees are now engaged in extracting oil from that part of the tract.'" [155 La. 825, 99 So. 614.]

In this case, not only was the person who sought to have the tax sale decreed invalid not in possession, but actually persons who claimed by virtue of the tax sale had exercised physical possession through their mineral lessees.

"In the case of Marque v. Kolwe, 5 La.App. 541, cited by plaintiff, as above stated, the Court recognized that the peremption did not run against the owner in actual physical possession.

"'But in interpreting Article 233, now Article 10, Section 11 of the Constitution, the Supreme Court has said that the prescription of three years did not run against a tax delinquent in actual, physical possession of the property at the time of the tax sale and as long as he remained in possession; in order words, that prescription was suspended during the actual possession of the tax debtor.'"

"That law is also recognized in the case cited by plaintiff:

"Progressive Realty Company, Inc. v. Levenberg [177 La. 749] 149 So. 444 [446]

" 'But it is well settled that the only character of possession on the part of the owner, whose property has been sold for delinquent taxes, that will prevent the running of the prescription of three years against an action to annul the sale, is actual, physical possession.'

"The other cases cited by counsel for plaintiff are easily distinguished from the case at bar.

Counsel for plaintiff cites Board of Commissioners for Fifth Louisiana Levee District v. Concordia Land & Timber Company, 141 La. 247 [74 So. 921, 922], for the statement that the constitutional peremption cures all irregularities and nullities in tax assessments and sale except on proof of dual assessment or payment for the taxes for which the property was sold prior to the date of sale. That case is similarly distinguishable from the case at bar. The first sentence in the opinion in that case is as follows:

" 'This is an action to establish title to real estate under Act 38 of 1908 [LSA–R.S. 13:5062].'

"The title of Act 38 of 1902 is as follows:

" 'To authorize the institution of suits to establish title to real estate *where none of the parties are in the actual possession of the same.*' "

"Likewise, counsel for plaintiff cites Atchafalaya Land Company v. F. B. Wil-

liams Cypress Company, 1920, 146 La. 1047 [84 So. 351, 353], for the statement that the constitutional peremption applies to a tax sale assessed in the name of one who is not the owner of the property even though the sale was made without notice to the owner. The person pleading the peremption was in actual possession of the land involved.

" 'It is admitted that Pharr & Williams, and, in turn, F. B. Williams and the F. B. Williams Cypress Company, paid the taxes assessed against the lands in contest every year since 1890; that they went into possession of the lands immediately after the patents were issued, exercised acts of ownership, had the timber cruised, estimated and marked, had canals dug and timber cut and removed from the lands, and did other acts of possession, openly, notoriously, and continuously, from the time the patents were issued to the date of filing of the defendant's answer to this suit.'

"The next case cited by plaintiff, Hollingsworth v. Schanlan, 155 La. 825 [99 So. 613], has been referred to hereinabove disclosing that the plaintiff who sought to have the tax sale decreed invalid was not in possession of the involved property.

"Byrne v. Commercial Security Company, 7 La.App. 667, cited by counsel for plaintiff, is to a similar effect, recognizing that there are additional exceptions to those

enumerated in Article 10, Section 11 of the Constitution.

"Kaufman v. Jackson, [La.App.] 55 So.2d 39 [42]

" 'The defendants remained in actual corporeal and undisputed possession of all of the 54 acres of which Kaufman now claims an undivided ⅓ interest and exercise at least equal possession with Kaufman of the 27 acre tract. The defendants have retained and been in actual and open possession of the 81 acres of land prior to and subsequent to the tax sale, and the mere fact that they heard and probably might have thought that they lost a portion of their property at the tax sale should not estop them in the face of the actual retention of possession from urging such a defense. No one questioned their possession nor took any action that divested them of their possession from the time of the tax sale in 1931 up until December 1, 1950 when the present suit was filed.'

"It is my opinion that the possession of G. D. Hogg could be tacked on to possession of T. B. Colvin and J. A. Colvin, and that G. D. Hogg was the owner of the involved property at the time of the tax sale of 1930. Mr. Hogg having maintained his physical possession until his death, and his widow and heirs having continued that possession to the present, it is my opinion that the constitutional peremption has not commenced to run, and that the invalidities in the tax title have been successfully urged by defendants in this petitory action.

\*     \*     \*     \*     \*     \*

"Plaintiff has never been in physical possession of the land involved in this suit.

"The correction deed of March 5, 1937, Conveyance Book 10, Page 474, from Mrs. Eva Smith, the sole heir of T. B. Colvin, and his wife, Hattie Mitchell Colvin, to G. D. Hogg, accurately and correctly describes the porperty to be

" 'All of Section 4, Township 19 North Range 2 West, lying and being North of Cypress Creek, formerly owned by T. B. Colvin, having been purchased from J. A. Colvin, under date of January 14, 1889.' "

"George D. Hogg was in physical and corporeal possession of all that part of the N½ of SW¼, Section 4, Township 19 North, Range 2 West, lying North of Cypress Creek on that date. His physical and notorious possession continued until his death, after which his widow and heirs maintained and continued that physical and corporeal possession.

\*     \*     \*     \*     \*     \*

" \* \* \* the equities are all with the defendants in the petitory action.

"The chain of title of the defendants emanates, so far as this litigation is concerned, plaintiff having alleged that L. G. Kirkland had acquired the property by mesne conveyance from the patentee and that allegation having been admitted by de-

fendants, from L. G. Kirkland by the deed of May 15, 1874 to F. M. McElduff who sold the involved property in 1878 to J. A. Colvin, but in which deed the township and range were omitted.

"Interpretative instruments to which F. M. McElduff and W. H. McElduff were parties disclose that the property was in Township 19 North, Range 2 West. Ross C. Neill, Clerk of Court, testified that F. M. McElduff never owned any property in Section 4 in Lincoln Parish, Louisiana, except in Section 4, Township 19 North, Range 2 West.

"The heirs of F. M. McElduff in the partition deed of 1917 included land that had been previously sold by their ancestor. The partition deed did not *convey* title, partition deeds being declaratory of title as distinguished from acts of conveyance transferring title.

" 'Acts of partition by persons claiming to own land *were at most only declaratory of title,* and not such muniments of title as is required as a basis of the 10 years prescription.' Ramsey v. Beck, 151 La. 190 [91 So. 674]; Pearce v. Ford, 124 La. 851 [50 So. 771]; Tillery v. Fuller, [190 La. 586], 182 So. 683; Tyson v. Spearman, [190 La. 871], 183 So. 201; Little v. Barbee, [195 La. 1071], 198 So. 368.

"Section 11 of Article 10 of the Constitution is, in part, as follows:

" 'No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, with ten per cent per annum interest on the amount of the price and taxes paid from date of the respective payments, be previously paid *to the purchaser.*- * * *.'

"Jackson v. Bernstein, [La.App.] 39 So.2d 120 [123].

" 'But, does the right conferred by the quoted part of the Constitution, that is, the right to demand reimbursement of taxes, etc., plus interest, as a condition precedent to cancellation of the null tax deed, extend to the vendee of the tax purchaser? We think not. The quoted provision seems to put this beyond doubt. It plainly says that the taxes, etc. 'be previously paid to the purchaser', before the cancellation shall be authorized.'

"Plaintiff, Dr. J. W. Thurmon, was not the tax purchaser. We think the quoted portion of the Constitution and the jurisprudence as announced in the Jackson v. Bernstein case controls, and that defendants are not obligated to plaintiff."

Therefore, it is our opinion that there should be judgment herein in favor of the defendants, Mrs. Alma Colvin Hogg, Tay H. Hogg, George D. Hogg, Mrs. Shirley Fuller, George Simonton and Anna Dora Simonton, and against the plaintiff, Dr. John W. Thurmon, rejecting the demands of plaintiff at his costs and recognizing the defendants to be the owners of all of

that part of the NE¼ of SW¼ of Section 4, Township 19 North, Range 2 West, lying North and West of Cypress Creek, Lincoln Parish, Louisiana, in the proportions recognized and set out in the judgment of the district court, which is this day affirmed.

Judgment affirmed.