970 So.2d 1075 (2007)
GEORGE M. MURRELL PLANTING & MANUFACTURING COMPANY
v.
Raymond DENNIS and Irene Dennis.
No. 2006 CA 1341.
Court of Appeal of Louisiana, First Circuit.
September 21, 2007.
*1078 John L. Delahaye, Jack T. Marionneaux, Borron & Delahaye, Plaquemine, LA, for Plaintiff-Appellee, George M. Murrell Planting & Manufacturing Co.
Allen J. Myles, Tedrick K. Knightshead, Myles & Myles Plaquemine, LA, for Defendants-Appellants, Raymond Dennis and Irene Dennis.
Before PARRO, GUIDRY, and McCLENDON, JJ.
PARRO, J.
Raymond and Irene Dennis appeal a judgment in this petitory action declaring that George M. Murrell Planting & Manufacturing Company (Murrell) is the owner of certain immovable property claimed by both parties. Based on our review of the facts and law, we amend the judgment, affirm the judgment as amended, and remand with instructions.

FACTUAL AND PROCEDURAL BACKGROUND
On January 14, 2002, Murrell filed a petition for recognition as owner of certain immovable property located in Iberville Parish. The petition described the property as:
A lot of land containing two superficial arpents bounded on the West by land of Peter Egerton, North by Jos. Henry and East by land formerly of P.O. Hebert, together with all improvements.[1]
Murrell's petition further stated that ownership of the above-described property was acquired from George Ross Murrell by an act of sale dated May 15, 1913, which was recorded in Book 72, Entry 42 of the conveyance records of Iberville Parish. Murrell acknowledged that it was not in possession of the disputed tract, and stated that Raymond and Irene Dennis (the Dennises) were unlawfully claiming ownership of the property and had recorded a document purporting to evidence that ownership in Book 500, Entry 137 of the conveyance records of Iberville Parish. Murrell sought judgment recognizing its ownership of the disputed tract and ordering the Dennises to surrender possession of that property to it. In an amending and supplemental petition, Murrell described the disputed tract in more detail, stating that it may also be described as:
That certain tract or parcel of land lying, being and situated in the Parish of Iberville and being the easterly portion of Tract D-2, which tract is shown on a map of survey by Patin Engineers & *1079 Surveyors, Inc. dated 03/23/98 and entitled "Plat Showing The Subdivision of a 3.09 Acre Tract Belonging to Raymond & Irene Dennis Into Tracts D-1 & D-2" a copy of which map being hereto attached and hereof made a part.
Said easterly portion of Tract D-2 measures 246.00 feet on its easterly line by a depth of 300 feet on its northerly and southerly lines and measures 245.5 feet on its westerly line and is bounded front or southerly by Cpi. Herman Brown Road, northerly by George Murrell, et al, easterly by St. Paul Baptist Church and westerly by the remaining portion of Tract D-2. Said tract of land is also depicted on the attached sketch prepared by Carl F. Grant, Registered Land Survey dated October 8, 1999 and entitled "Preliminary Sketch Showing Property Claimed By Murrell & By Dennis Made From Abstract Information Supplied By John Delahaye & Referenced Survey Map" a copy of which sketch is hereto attached and hereof made a part and being that tract labeled "Claimed by Murrell & Dennis 2.0 Arp."[2]
In a second amending and supplemental petition, Murrell asked for payment of the fair rental value of the disputed tract.
The Dennises denied the allegations of Murrell's petitions and claimed they were owners of the disputed tract by virtue of an acquisition from the McKelry[3] estate and had been in peaceful possession of the property since the date of acquisition. Although they did not expand their pleadings, they testified at the trial that they had possessed the disputed tract before they actually bought it, and that their ancestors in title, the McKelrys, had previously possessed it for many years.
After a trial, the court concluded that Murrell had proved it was the owner, through record title, of the disputed tract[4] and was entitled to $6000 in rentals that had been received by the Dennises for a trailer located on that property. The judgment also assessed all court costs, including experts' fees, to the Dennises. In this appeal, the Dennises contend the trial court erred in its conclusion concerning ownership of the disputed tract.

APPLICABLE LAW
In Louisiana, the petitory action is available for the recovery of immovable property. A.N. Yiannopoulos, Property § 268, at 540, in 2 Louisiana Civil Law Treatise (4th ed.2001). The petitory action is one brought by a person who claims the ownership, but who is not in possession, of immovable property, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff's ownership. LSA-C.C.P. art. 3651; Lafourche Realty Co., Inc. v. Duard Eymard Co., Inc., 93-1278 (La.App. 1st Cir.6/24/94), 638 So.2d 1138, 1139, writ denied, 94-1991 (La.11/11/94), 644 So.2d 390. To obtain a judgment recognizing his ownership of immovable *1080 property, the plaintiff in a petitory action must: (1) prove that he acquired ownership from a previous owner or by acquisitive prescription, if the court finds that the defendant is in possession of the property; or (2) prove a better title thereto than the defendant, if the court finds that the latter is not in possession thereof. LSA-C.C.P. art. 3653. Therefore, the first issue that must be determined in a petitory action is the question of current possession. Mt. Everett African Methodist Episcopal Church v. Carter, 96-2591 (La.App. 1st Cir.12/29/97), 705 So.2d 1179, 1181. The defendant's possession, or lack of it, determines the burden of proof imposed on the plaintiff. Joffrion v. Scioneaux, 506 So.2d 512, 513-14 (La.App. 1st Cir.1986), writ denied, 505 So.2d 1132 (La.1987). The possession required to put the more onerous burden on the plaintiff is the same possession required to initiate the possessory action or to establish acquisitive prescription. Griffin v. Daigle, 99-1942 (La. App. 1st Cir.9/22/00), 769 So.2d 720, 725, writ denied, 00-3406 (La.2/2/01) 784 So.2d 648; see LSA-C.C.P. art. 3660. The defendant is in possession when he and his ancestors in title have had corporeal possession for at least one year or civil possession for the same period of time preceded by corporeal possession. See LSA-C.C.P. arts. 3658 and 3660; LSA-C.C. art. 3476; Id.
Ownership of immovable property may be acquired by the prescription of ten years by one who acquires the property in good faith under a just title and possesses it for ten years. See LSA-C.C. arts. 3473 and 3475. For acquisitive prescription, a possessor is in good faith when he reasonably believes, in light of objective considerations, that he is the owner of the thing he possesses. LSA-C.C. art. 3480.
Ownership of immovable property may also be acquired by the prescription of thirty years without the need of just title or possession in good faith. LSA-C.C. art. 3486. In a petitory action, when one party relies on title and the other on acquisitive prescription, the party relying on title will prevail unless the adversary establishes his ownership by acquisitive prescription. Pace v. Towns, 33,071 (La.App. 2nd Cir.4/5/00), 756 So.2d 680, 682. Stated another way, ownership of immovable property under record title may be eclipsed and superseded by ownership acquired under prescriptive title. Under the general codal provisions on acquisitive prescription, a possessor lacking good faith and/or just title may acquire prescriptive title to land by corporeally possessing a tract for thirty years with the intent to possess as owner. Such possession confers prescriptive title upon the possessor only when it is continuous, uninterrupted, peaceable, public, and unequivocal, and confers title only to such immovable property as is actually corporeally possessed. See LSA-C.C. arts. 3424, 3426, 3476, 3486, 3487, and 3488; Falcone v. Springview Country Club, Inc., 96-0794, 0795, and 0796 (La.App. 1st Cir.3/27/97), 691 So.2d 314, 316; Brown v. Wood, 451 So.2d 569 (La.App. 2nd Cir.), writ denied, 452 So.2d 1176 (La.1984). Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing. LSA-C.C. art. 3425.
For purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed. LSA-C.C. art. 3487. Actual possession must be either inch-by-inch possession or possession within enclosures. An enclosure is any natural or artificial boundary. LSA-CC. art. 3426, comment (d), Revision Comments-1982, citing A.N. Yiannopoulos, Property §§ 212-214, in 2 Louisiana Civil Law Treatise (2d ed.1980). The party who does not hold *1081 title to the disputed tract has the burden of proving actual possession within enclosures sufficient to establish the limits of possession with certainty, by either natural or artificial marks, giving notice to the world of the extent of possession exercised. Secret Cove, L.L.C. v. Thomas, 02-2498 (La.App. 1st Cir.11/7/03), 862 So.2d 1010, 1015, writ denied, 04-0447 (La.4/2/04), 869 So.2d 889.
One is presumed to intend to possess as owner unless he began to possess in the name of and for another. LSA-C.C. art. 3427. The intent to possess as owner may be inferred from all of the surrounding facts and circumstances. Secret Cove, 862 So.2d at 1015.
Possession can be transferred by universal title or by particular title. LSA-C.C. art. 3441. When possession is so transferred, the possession of the transferor is tacked to that of the transferee if there has been no interruption of possession. LSA-C.C. art. 3442. Under these provisions, privity of contract or estate is an essential prerequisite to tacking of possession. Secret Cove, 862 So.2d at 1015; Brown, 451 So.2d at 573. Therefore, under the general tacking provisions of Articles 3441 and 3442, tacking is only allowed with respect to property that is included and described in the juridical link between the possessor's ancestor in title and the possessor himself. Brown at 573-74. Alternatively, under Louisiana Civil Code article 794, dealing with boundary actions, a title holder may acquire more land than his title calls for by possessing property beyond his title for thirty years without interruption and within visible bounds. The difference is that under Article 794, one may utilize tacking to prescribe beyond title on adjacent property to the extent of visible boundaries, whereas the general prescriptive articles allow tacking in order to prescribe to the extent of title. Id.; Secret Cove, 862 So.2d at 1015-16.
Whether a party has possessed property for purposes of thirty-year acquisitive prescription is a factual determination by the trial court and will not be disturbed on appeal unless it is clearly wrong. Secret Cove, 862 So.2d at 1015. Where findings are based on determinations regarding the credibility of witnesses, the trier of fact's findings demand great deference and are virtually never manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989); Gewalt v. Stevens, 98-2666 (La. App. 1st Cir.9/24/99), 757 So.2d 705, 707, writ denied, 99-3063 (La.1/7/00), 752 So.2d 865.

DISCUSSION OF FACTS AND APPLICATION OF LAW
Because Murrell admitted in pleadings that it was not in possession of the disputed property, but that the property was possessed by the Dennises, Murrell had the burden of establishing ownership by acquisition from a previous owner or by acquisitive prescription. To meet that burden of proof, Murrell presented the testimony of Drew Christopher Gaudet, a professional abstractor, who had prepared an abstract of title for Murrell. The abstract was admitted into evidence, along with the Grant sketch, which Gaudet said was prepared for him. Gaudet testified that the abstract of title agreed with the configuration of the relevant properties in the Grant sketch, which showed a two-arpent parcel of property "claimed by Murrell & Dennis," bordered on the east by property owned by St. Paul Baptist Church and on the west by two tracts owned by the Dennises. According to Gaudet, the abstract of title that he prepared shows that the record owner of the two-arpent disputed tract is Murrell, which *1082 acquired it in 1913 and did not transfer or sell it after that date.[5] The property acquired by Murrell at that time was described as:
A lot of land containing two superficial arpents bounded on the West by land of Peter Egerton, North by Joseph Henry, and East by land formerly of P.O. Hebert together with improvements.
Gaudet testified that he had traced Murrell's unbroken chain of title to the disputed tract from 1797 to the present.[6]
Gaudet had also traced the title to the Dennises' property, which originated with a November 1920 partition among the heirs of Egerton of a three-arpent parcel directly west of the disputed tract.[7] In the Egerton partition, a one-and-one-half-arpent parcel was transferred to Agnes Jackson McKelry; that parcel was bounded on the north by Henderson Banks and on the east by land of Mary Ann Billieu. The land of Mary Ann Billieu referred to in that partition is the disputed tract, which Gaudet identified as currently owned by Murrell.[8] Gaudet stated that the Dennises had acquired the one-and-one-half-arpent parcel from the estate of Joseph McKelry and Agnes Jackson McKelry in 1997. The property description in that cash sale to the Dennises was:
A tract of land being more particularly described in that Act of Petition [sic] recorded in C.B. 47, Entry 932, official records of Iberville Parish, Louisiana containing one and one-half arpents, more or less, being located in Section 38, T-10-S, R-13-E, Town of Bayou Goula, Iberville Parish, Louisiana; also, described as being bounded now or formerly on the North by lands of George Murrell, et al, on the East by St. Paul Baptist Church, on the South or front by Cpl. Herman Brown Road, formerly Hebert Road, and on the West by property of George LeBlanc, Jr., et al.[9]
Gaudet testified that when the Dennises had their survey done (the Patin survey), *1083 the survey included the disputed tract, which Gaudet identified as the Murrell property, up to the St. Paul Baptist Church.
D. Denis Murrell (Mr. Murrell), the president of Murrell, also testified concerning the corporation's ownership of the disputed tract. He stated that the property designated on the Grant sketch as "Claimed by Murrell & Dennis 2.0 Arp." is owned by Murrell. Murrell had allowed someone to locate a trailer there many years earlier, and for a number of years, had collected rent from Mr. Michael Little (Mr. Little), the occupant of that trailer. Mr. Murrell testified that he became aware of an adverse claim concerning the disputed tract when he received a letter from an attorney, demanding that Mr. Little be reimbursed $2100 that Murrell had been "illegally collecting" from him. The letter included a sketch of the disputed tract where the trailer was located. That sketch also indicated that the easternmost portion of the disputed tract was being used as a parking lot by the St. Paul Baptist Church, Mr. Murrell confirmed that his company had allowed the church to use part of the property for a parking lot for "probably ten or more" years. He further stated that Murrell had let people pick pecans on the disputed tract; they would give Murrell half of the pecans they picked as consideration for their use of the property. Mr. Murrell said he had been aware of Murrell's ownership of the disputed tract ever since he got out of the military service in 1955.
On cross-examination, Mr. Murrell admitted that he did not know if Murrell was paying the property taxes on the disputed tract, because the company owns so much property that it just pays what is assessed. He could not say whether taxes were paid by Murrell on any one, particular piece of property. Mr. Murrell stated that he would not claim any property that he or the company did not own.
Cletus Langlois, a registered professional land surveyor, testified that he was the surveyor who created the Patin survey for the Dennises. Langlois said that the documents provided to him by the Dennises were very vague, and he told them he could not "actually put those documents on the ground without a full abstract being done." He said he was not given an abstract, but some time later, the Dennises asked him to simply show on the survey the boundaries of the property they were possessing. Therefore, the property lines shown on the Patin survey merely established the extent of the Dennises' claimed possession and had nothing to do with actual title to the property. Langlois pointed out that his notes written on the upper left corner of the Patin survey clearly stated:
The description given for the tract of land transferred to Raymond Dennis & Irene Dennis by cash sale on September 10, 1997 does not give any dimensions for the "one and one-half arpents" transferred. The property lines shown are claimed possession lines as delineated by Raymond Dennis. No title warranty is implied or given.
Langlois further explained that the amount of property being claimed by the Dennises was about three acres, or about five arpents, considerably more than the "one and one-half arpents" actually shown in the cash sale.[10] Referring to the Grant sketch, Langlois stated that the arpents shown on the two tracts to the west of the disputed tract, which were designated as owned by Dennis, totaled approximately *1084 one and one-half arpents, while the disputed tract, shown on the Grant sketch as claimed by Murrell and Dennis, was a two-arpent tract.[11] The court then asked:
So, they have taken the one and a half plus the two arpents from the Murrell and put it inside their description; is that correct?
Langlois responded in the affirmative. The court then commented:
It appears looking at the record what I've seen so far, they purchased an arpent and a half of ground, and if you look at the description . . . it says, bound on the east by the church. There's your problem right there. I can tell you where it is. So now what we have is them possessing in good faith under color of title, but they've got to do it for ten years. And, there's your problem you're dealing with.
Wallace Hargrave, a civil engineer and land surveyor, testified that he had been to the property and had studied the Patin survey prepared by Langlois. He explained that a "linear arpent" differs from a "superficial arpent," which is the way all the terminology in the abstract of this property was described. Basically, a "superficial arpent" is the surface area of property, the length and width of which are equal and consist of one linear arpent.[12] Hargrave said the property sold to the Dennises was not deep enough to allow two superficial arpents. So they had to make it one and one-half superficial arpents. Hargrave stated that he also had prepared an abstract of title for the disputed tract and had traced the title back to 1860, when the disputed tract was deeded from Governor Hebert to several individual owners. He said "you trace the present ownership today of that two arpents to the Murrells. That's my conclusion of it." Looking at the Grant sketch, Hargrave confirmed the accuracy, "plus or minus a foot," of the location at which the sketch showed the property line between the land claimed by Murrell and the Dennises (the disputed tract) and the Dennis property to its west.
Raymond Dennis identified the 1997 act of cash sale in which he and his wife acquired the disputed property, along with the property immediately to the west of the disputed property. He said they had actually possessed the property before acquiring it from the estate by paying taxes from about 1989 or 1990, while they tried to get a succession opened regarding the property. Dennis said he was not aware of any previous owner of the disputed property prior to the McKelrys owning it, but in the next sentence stated that the McKelrys were heirs of the Billieus. Dennis said he employed Patin Engineers to survey the property, and he identified the Patin survey as the completed document. He read the statement on the survey stating that the "property lines shown are claimed possession lines as delineated by Raymond Dennis." However, Dennis said he simply gave Langlois the property description prepared by his attorneys and asked him to "survey the piece of property *1085 that we have described on the map." He denied pointing out to Langlois on the ground the area that he wanted surveyed. When shown the dates on the cash sale (September 1997) and the Patin survey (March 1998), Dennis said that the survey was prepared after the cash sale, using the property description in the cash sale.[13] His understanding of the Patin survey was that the whole area shown as "Raymond and Irene Dennis, 3.09 acres" belonged to him and his wife. Dennis also said he had hired an abstractor to provide additional information about the boundary lines and aid the surveyor, if necessary. However, although he paid the abstractor's invoice, he never saw the completed abstract and assumed it had been provided to his attorney. Dennis said he had received a copy of the Grant sketch from Murrell's attorney, and he understood from that sketch that some of the property he thought was his was also being claimed by Murrell.
Dennis said his son lived in the house on a portion of the property that was not the disputed tract. He also said there were trailers on the property, but none of them were on the disputed tract. Dennis said he knew the McKelrys had owned quite a bit of property, but he did not know what size his purchase included; he only knew the boundaries. He did not know the area of an arpent as compared to an acre. When shown the cash sale description as encompassing one and one-half arpents, more or less, Dennis said he did not know what that meant; "It could be more. It could be less. It could be 50. It could be ten." Dennis said he knew there was a lot of McKelry property, and knew enough about it to know it was more than an arpent and a half, based on the property descriptions in the McKelry succession documents. He also said that he did not tell Langlois to just come out and mark the corners and draw a plat according to his instructions. Dennis stated he did not understand the notes written on the Patin survey concerning the property lines being the "claimed possession lines" as delineated by him. He claimed the McKelry succession was opened by his son because he had "some [distant] family members that's in the succession."
Dennis said his understanding was that by paying the taxes on the property even before he purchased it, he was "in control of it" or in possession of it. He did not know whether the taxes he paid before 1997 were in the name of or on behalf of the McKelrys or in his own name. He was shown a quit-claim and conveyance from the tax assessor showing that in 1992, the property was redeemed from a tax sale by "Est. Agnes Jackson McKellery c/o Raymond Dennis, Jr." Dennis then said he was paying the taxes on behalf of Mrs. McKelry before he bought the property. In the next sentence, he said he did not know whether he was paying in her name, stating again, "I was in possession of it in so far as I was paying the taxes on it." Reviewing the Grant sketch, Dennis said there was one trailer on the disputed property. It belonged to Mr. Little, who was paying him $75 per month in rent. Dennis said he had been collecting that rent for "about a couple of years." He admitted that ownership by title had not passed to him until 1997, which was less than ten years earlier, but he said his understanding is that once he "had paid the taxes on it for x-amount of years . . . I could claim ownership of it." At this point the court asked Dennis to clarify, stating:

*1086 Let me see if I understand what your understanding is. So if I go down to [the assessor] today and say . . . tell me how much the taxes are on Mr. Dennis and I'm going to pay his property tax for the next five years, I can go and take your property away from you? You pay it and I pay it, we both pay it, and I come and take your property because I paid the taxes. Is that your understanding of how the law works?
Dennis responded, "Well, yes." When asked by Murrell's attorney whether he understood that according to the bill of sale, he had not owned the property for ten years, Dennis said:
Not with the ownership since '97, no. But to my knowledge, when I paid taxes on it, this year would be like 16 or 17 years I think that is long enough for somebody somewhere down the line to understand that somebody has some ownership here. And that's the understanding that I had.
Dennis said that during the 34 years he had lived in Bayou Goula, he never had any idea that a portion of the property was owned by Murrell and thought all of it had been owned by the McKelrys before he and his wife bought it. He said he had always known that it was the McKelrys' property, because the McKelrys took care of the land, cut grass and trees, etc., until the Dennises took possession of it and did that kind of work on the land. However, Dennis did not personally know and could not name anyone from the McKelry family who might have lived or worked on the disputed tract.
Mrs. Dennis prefaced her testimony with the declaration that all the dealings with the land were done by professional, licensed people. She reiterated this statement throughout her testimony. Mrs. Dennis agreed that she and her husband had started paying taxes on the land 16 or 17 years earlier and also did other things on the land, such as clearing it, leveling it, and putting trailers on it before hiring the surveyor, abstractor, and attorney-all licensed professional people-to finalize the purchase. Her understanding was that from the time they started paying taxes, they were holding out to the world that they owned the property, and just had to complete the "process" by obtaining title to it. When the Patin survey was complete, Mrs. Dennis understood that the property described on it was owned by her and her husband. She had never heard that Murrell owned any property on Hebert Street. The following colloquy between Mrs. Dennis and the court then occurred:
Q. Let me ask you a rhetorical question: who owns that piece of property from the [west] of ya'll to the highway?
A. What piece?
Q. In other words, they've got the church and we are going to the west 
A. You talking about the field?
Q. Church, then the property y'all are both claiming y'all own, and the property that your son's house is on, then some other property, and then there is a field going to the highway. Who owns that spot between the highway and there?
A. Not titled to anyone, Judge, Your Honor.
Q. Okay. I thought I understood you to say that and I wanted to be clear. Every piece of property in the State of Louisiana is titled to somebody, either [an] organization, some legal entity, some individual, it is titled to somebody.
Mrs. Dennis reiterated her husband's understanding of the law, stating in response to a question concerning what she thought paying taxes on somebody else's property would do for her:

*1087 I paid the tax on it because that somebody else did not pay tax on it. So what it do[es] for me is gives me the chance to keep paying the tax so that I can own the property.
At one point in cross-examination, rather than state the date of the cash sale of the property to them, Mrs. Dennis said, "I take the Fifth Amendment on that because we have went over that over and over." Eventually, she opined that the phrase, "one and one-half arpents, more or less" meant more, because "the survey man said more."
Mrs. Dennis said that for all of her adult life, the McKelrys had owned the land involved in this case, including the disputed tract. She said she knew them personally, and knew that they owned it and possessed it. Although they lived in New Orleans, they had people in the community clean the land and take care of it. She never recalled a time when Murrell owned any of the land. It had been possessed by the McKelrys "from next to the church" for at least thirty years. Mrs. Dennis later acknowledged that she did not know Joseph and Agnes Jackson McKelry personally, since both of them had died long before she was born, but knew about them from her grandparents and knew some of their relatives. One name she was familiar with was Althea Coleman, who had at one time picked pecans on the property, but she could not say what Ms. Coleman's relationship was to the McKelry family  possibly a first or second cousin.
After reviewing all the evidence in this case, it is clear from the abstract of title that Murrell acquired ownership by title to the disputed tract in 1913, and established its unbroken chain of title to that property from 1797 to the date of the trial in June 2005. Mr. Murrell also testified that he, as president of the company, gave permission to Mr. Little to locate his trailer on the property and collected rent from him for a period of years. About ten years before the trial date, he also allowed the St. Paul Baptist Church to begin using the easternmost portion of the disputed tract as a parking lot. Therefore, Murrell established its ownership and illustrated its past acts of possession of the disputed tract. The only way the Dennises could have satisfied their claim to ownership of that property was by acquisitive prescription, either by ten years of possession with title and good faith or by thirty years of corporeal possession with the intent to possess as owner. They did not obtain any semblance of title to the disputed tract until 1997. Therefore, the ten-year acquisitive prescription available to those who hold title in good faith for that length of time is not applicable.
The only other way they could have acquired ownership of the property and supercede Murrell's title is by continuous, uninterrupted, peaceable, public, and unequivocal corporeal possession of the disputed tract for a thirty-year period. Based on their testimony, the Dennises did not begin to pay taxes on any of the property until the late 1980s. Although their testimony concerning their work on the land was not as date-specific, it also appears they did not begin clearing the land, mowing, it, cutting trees, etc., until about the same time. Therefore, their corporeal possession of the property fell far short of the requisite thirty years. Nor could they "tack" onto the possession of their ancestors in title, the McKelrys, because their testimony was insufficient to establish that the McKelrys actually possessed the disputed tract, which was beyond their title. Joseph and Agnes McKelry were both deceased by 1922, so their corporeal possession of their own property and/or the disputed tract ceased by that time. Neither of the Dennises could establish from personal *1088 knowledge that specific persons related to Joseph and Agnes McKelry ever performed acts on the disputed tract that one could presume they were doing as owners. Simply picking up pecans on adjoining land belonging to someone else does not establish the intent to possess that land as owner. The Dennises' beliefs that the McKelrys possessed all of the property, including the disputed tract, were based on general "knowledge" in the community and on stories passed down to them by their grandparents. As such, although the Dennises testified concerning their beliefs, these did not constitute facts sufficient to establish their thirty-year acquisitive prescription of the disputed tract.
For these reasons, we find there is a reasonable factual basis in the record for the factual finding of the trial court that Murrell owns the disputed tract, and our review of the record does not establish that the finding is manifestly erroneous. However, we note that a judgment affecting title to immovable property must describe the immovable property affected with particularity. LSA-C.C.P. art. 1919. The judgment of the trial court in this case did not describe the immovable property, but merely attached a copy of the Grant sketch. While that document depicts the property, it does not describe it in words. Since the record contains an accurate description of the disputed tract, we will amend the judgment to include this description.

CONCLUSION
For the above reasons, the judgment of February 8, 2006, is hereby amended to show that Murrell is the owner, through record title, of that tract of land described as:
A lot of land containing two superficial arpents bounded on the West by land of Peter Egerton, North by Joseph Henry and East by land formerly of P.O. Hebert, together with all improvements.
Said property is more particularly described as:
That certain tract or parcel of land lying, being and situated in the Parish of Iberville and being the easterly portion of Tract D-2, which tract is shown on a map of survey by Patin Engineers & Surveyors, Inc. dated 03/23/98 and entitled "Plat Showing The Subdivision of a 3.09 Acre Tract Belonging to Raymond & Irene Dennis Into Tracts D-1 & D-2" a copy of which map being hereto attached and hereof made a part.
Said easterly portion of Tract D-2 measures 246.00 feet on its easterly line by a depth of 300 feet on its northerly and southerly lines and measures 245.5 feet on its westerly line and is bounded front or southerly by Cpl. Herman Brown Road, northerly by George Murrell, et al., easterly by St. Paul Baptist Church and westerly by the remaining portion of Tract D-2.
Said tract of land is also depicted on the attached sketch prepared by Carl F. Grant, Registered Land Surveyor dated October 8, 1999 and entitled "Preliminary Sketch Showing Property Claimed By Murrell & By Dennis Made From Abstract Information Supplied By John Delahaye & Referenced Survey Map" a copy of which sketch is hereto attached and hereof made a part and being that tract labeled "Claimed by Murrell & Dennis 2.0 Arp."
In all other respects, the judgment is affirmed. This matter is hereby remanded to the trial court with instructions to reform its judgment in accordance with this opinion. All costs of this appeal are assessed to Raymond and Irene Dennis.
*1089 AMENDED AND AFFIRMED AS AMENDED. REMANDED WITH INSTRUCTIONS.
GUIDRY, J. concurs.
NOTES
[1] In this opinion, we may refer to the property at issue as "the disputed tract."
[2] The document described in the first paragraph will be referred to in this opinion as "the Patin survey." The document described in the third paragraph will be referred to in this opinion as "the Grant sketch."
[3] Throughout the record, various spellings are used for the names of the parties and previous owners of the relevant properties. We have chosen the spellings that appear most historically correct, based on the title documents. Although the cash sale to Mr. and Mrs. Dennis was made from "The Estate of Joseph McKellery and Agnes Jackson McKellery," the 1920 partition document by which the one-and-one-half arpent tract was acquired by them is signed by Joseph McKelry and Agnes McKelry.
[4] A copy of the Grant sketch was attached to the judgment.
[5] He also said that Mary Ann Lee Billieu was a former owner of the disputed tract sold to Murrell in 1913.
[6] Gaudet explained that the earliest documents were in French, and he had to translate them to get the complete abstract of title. Although the Dennises' attorneys argued in briefs to this court that Gaudet admitted he could not translate French, this statement was inaccurate. The record shows that the question from the Dennises' attorney was "Did [you] say [you] had to research through French records and translate?" Gaudet replied, "That's correct." The attorney then reiterated, "Translate?" And Gaudet again said, "That's correct." He never said he was unable to make such a translation.
[7] Gaudet also said all of the parcels were originally owned by former Governor Paul Hebert, who subdivided the parcels into smaller tracts.
[8] Although Murrell had already acquired the Billieu property by the time of the Egerton partition, the Egerton property was described in terms of the earlier adjoining landowners, apparently because it is customary to maintain the exact same description in a transfer of immovable property in order to ensure the accuracy of the transfer. Therefore, the earlier property description was continued in the partition, rather than being updated to reflect the actual ownership (Murrell) as of 1920.
[9] Our examination of the cash sale also shows that immediately following the property description are the following disclaimers:

The parties hereto agree to hold said Notary harmless, as boundaries and dimensions were supplied to Notary by Vendor and Vendee herein.
No title examination was requested or performed and all parties hold Notary herein harmless for any defects in the title to this property.
We note also that the administrator of "The Estate of Joseph McKellery and Agnes Jackson McKellery" was Raymond Dennis, Jr., the Dennises' son, who represented the estate as the vendor of the property.
[10] Langlois' testimony on the mathematical underpinnings of this estimate was, by his own admission, "backwards" when he first explained the computations.
[11] We note that this testimony is obviously inconsistent with his earlier statement, since Langlois now estimated the properties claimed by the Dennises as three and one-half arpents, rather than the five arpents he had previously estimated. Either way, the area of the claimed property exceeded the described area in the property sale from the McKelry estate to the Dennises.
[12] According to Webster's Third New International Dictionary 120 (1968), an arpent is "any of various old French units of land area; esp: a unit still used in certain French sections of Canada and the U.S. equal to about 0.85 of an acre." By this definition, one and one-half superficial arpents would be 1.275 acres.
[13] We note that the Patin survey states that it was prepared "to show the subdivision of a 3.09 acre tract owned by Raymond and Irene Dennis into two tracts designated as Tract D-1 and Tract D-2."