CRAIN, J.
laThe plaintiffs in this proceeding, which originated as a possessory action, appeal a judgment declaring the defendants to be owners of certain immovable property and denying the plaintiffs’ claim for damages. Maintaining the appeal, we find that the defendants failed to prove their ownership of the disputed property, reverse the trial court’s judgment, in part, and.render judgment recognizing and restoring the plaim tiffs’ possession of the property, and awarding them damages.
FACTS
The disputed property, located in Tangi-pahoa Parish, measures 50 feet wide by 275 feet long and is identified in the follbw-ing survey excerpt as “Assumed 50’ R/W Main St,” with the eastern boundary of the parcel not depicted:
[[Image here]]
The property is bounded on the north by property owned by the plaintiffs, Elvin A. Campbell, III, and Patti R. Campbell, and to the south by two parcels, one which is owned by the defendants, Julius W. Cerdes, Jr., Melissa Po.che Cerdes, |sand Duke R. Kent (collectively “Cerdes”). The Cerdes parcel is labeled “(Dendinger)” on the above survey and is contiguous with the southern boundary* of the disputed property for approximately 144 feet. The disputed property is,, near the Ponchatoula River and can be used to access the river.
Although the record does not reflect the original ownership of the disputed property, land maps suggest that it was an extension of Wadesboro Road (also identified as “Main St.” on some maps) that was never dedicated to public use. Wadesboro Road is a paved road that approaches the disputed property from the east. When the paved roadway reaches the eastern edge of the disputed property, the road turns right (to the north) and runs along the eastern boundary of the Campbell parcel.
The Campbells acquired their property on November 26, 1996. Based on representations from their vendor, Mr. Campbell-believed that the disputed property was included in their deed. Shortly after acquiring his property, Mr. Campbell *45 cleaned and cleared the disputed property, which he described as “completely grown up” and littered with discarded items such as water heaters and furniture. Mr. Campbell continued to maintain the disputed property; and, in 2003, he constructed a driveway on it that was used to access his property and residence.
In January of 2011, the Cerdes purchased the Dendinger parcel on the south side of the disputed property from Theodore J. Dendinger, Jr., Kenneth Lee Den-dinger, and Barbara Dendinger Acton (collectively “Dendinger siblings”). The act of conveyance included a “quitclaim” of the Dendinger siblings’ interest in the disputed property, which, according to the deed, “they, or their ancestors in title, have used ... in excess of thirty (30) years.”
14Also in 2011, Mr. Cerdes approached Mr. Campbell to inquire about the location of the southern boundary of the. Campbell parcel. Mr. Campbell produced a map indicating that his property included the disputed property. Mr. Cerdes then hired a surveyor to locate'and mark the southern boundary of the Campbell parcel. That survey revealed that the Campbells’ boundary was along the northern boundary of the disputed property, meaning the disputed property was not included in the property conveyed to the Campbells. Shortly thereafter, Mr. Cerdes undertook measures to block the Campbells from using the disputed property. Mr. Cerdes removed a culvert that was a part of the Campbells’ driveway, rendering it unusable, and cleared the disputed property all the way to the river, building up the roadbed beyond the Campbell’s driveway. The work was undertaken to facilitate access to a boat repair business started by ■ the Cerdes on the property abutting the Ponchatoula River.
The Campbells filed a possessory action against the Cerdes, alleging that the Campbells had possessed the, disputed property since 1996 and that -the defendants had disturbed their possession. The Campbells requested that they be restored and maintained in possession of the property and be awarded . damages. The Cerdes answered and-, reconvened, claiming they were entitled to be recognized as owners of the disputed property because their ancestors in title had possessed it for thirty years without interruption.
The matter proceeded .to a bench trial. In support of their claim of ownership, the Cerdes introduced the 2011 deed containing the quitclaim of the disputed property and . the warranty conveyance of the Den-dinger parcel south of the disputed property. That deed is the only documentary evidence admitted .atjrial of -any titlq to either the disputed property or the adjacent Dendinger parcel.
|sThe Cerdes also introduced the discovery deposition of Theodore J. Dendinger, Jr., who testified that he believed.the disputed property had always been owned by the Dendinger family. His earliest.memory of the use of the disputed property dated back to 1948 or 1949, when his family began using it to access the river with trucks for the purpose of loading and transporting shells delivered by boats. The shells were used by the Dendingers to improve roads on other property owned by them.
At that time, according to Mr. Dendinger, the property was owned by Dendinger, Inc. Mr. Dendinger testified that the property was then acquired by his father in 1961 and was leased for approximately ten years to a tenant who sold the shells commercially.- The written leases admitted into evidence contain terms from 1961 to-1964 and included only that portion of the disputed property' directly north of the Dendinger parcel. Mr. Dendinger testified that he believed he and his siblings *46 acquired the property by donations from their parents in 1981. He offered little testimony about the use of the property after that time; however, he did acknowledge being informed that Mr. Campbell “had used a machine” to make some changes to the property and was aware that Mr. Campbell was using the property as a driveway.
The Campbells presented testimony from numerous witnesses who stated that they, as well as others, commonly used the disputed property as a boat launch from the 1940s through the 1980s. One witness estimated that he used the property for that purpose on approximately 200 occasions. A member of a family that previously owned the Campbell parcel testified that he and his family accessed their property through a driveway located on the disputed property from the 1940s through 2000.
IfiMr. Campbell also testified about his use of the disputed property after acquiring his property in 1996. Mr. Campbell believed that the disputed property was included in his deed and that it could be used for access. He cleared the tract and eventually built a driveway on it that was used to access his residence until 2011, when Mr. Cerdes blocked the driveway at its entrance to the Campbell parcel.
After taking the matter under advisement, the trial court issued written reasons finding that the Cerdes had “established] their ownership of the subject tract and Campbell [had] failed to provide adequate evidence which outweighs the evidence of [the] Cerdesf] ownership.” The trial court subsequently signed a judgment that declared the Cerdes to be the owners of the disputed property and denied any damages to the parties. The Campbells now appeal and assign as error the trial court’s finding that the Cerdes acquired the disputed property by adverse possession, the trial court’s application of the Civil Code article permitting “boundary tacking,” and the denial of their claim for damages.[1]
DISCUSSION
This proceeding is a real action. La.Code Civ. Pro. Art. 422. Although it began as a possessory action, by asserting title and requesting that the court recognize their ownership, the Cerdes converted the matter to a petitory action and judicially confessed the possession of the disputed property by the Campbells. See La.Code Civ. Pro. art. 3657; Dielcerson v. Davis, 10-0776 (La.App. 1 Cir. 10/29/10), 2010 WL 4273178, *2. The petitory action is one brought by a person |7who claims the ownership, but who is not in possession, of immovable property against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiffs ownership. La. Code Civ. Pro. art. 3651. Because the Campbells are in possession of the disputed property, the Cerdes were required to prove that they acquired ownership of that property from a previous owner or by acquisitive prescription. See La.Code Civ. Pro. art. 3653(1); La. Civ.Code art. 531.
The Cerdes contend that they acquired ownership through the quitclaim deed from the Dendinger siblings, who allegedly owned the property by virtue of thirty year acquisitive prescription. As explained hereinafter, this contention re *47 quires evidence that (1) the Dendinger siblings themselves possessed the disputed property for thirty years, or (2) the Den-dinger siblings and their ancestors in title possessed the disputed property for thirty years. We first review the record to determine whether it reasonably supports a finding that the Dendinger siblings themselves possessed the disputed property for thirty years without interruption.
A possessor lacking good faith or just title may acquire prescriptive title by possessing the immovable property for thirty years with the intent to possess as owner. See La. Civ.Code art. 3486. Such possession confers prescriptive title upon the possessor only when it is continuous, uninterrupted, peaceable, public and unequivocal, and confers title only to such property as is actually possessed. See La. Civ.Code arts. 3424, 3476, 3487, 3488; Blackstone Investments, LLC v. Strother, 10-1163 (La.App. 1 Cir. 5/6/11), 2011 WL 1938671, *2. Actual possession must be either inch-by-inch possession or possession within enclosures. An enclosure is any natural or artificial boundary. See La. Civ.Code art. 3426, comment (d); George M. Murrell Planting & Manufacturing Company v. Dennis, 06—1341 (LaApp. 1 Cir. 9/21/07), 970 So.2d 1075, 1080. Whether a party has possessed property for purposes of thirty year acquisitive prescription is a factual determination by the trial court and will not be disturbed on appeal unless it is clearly wrong. Kadair v. Hampton, 13-1171 (La.App. 1 Cir. 7/10/14), 146 So.3d 694, 702, writ denied, 14-1709 (La.11/7/14), 152 So.3d 177.
The evidence of possession of the disputed property by the Dendinger siblings is limited. While Mr. Dendinger testified that the property was used for shell operations from the late 1940s through the early 1970s, those acts of possession, according to Mr. Dendinger, were undertaken by or on behalf of Dendinger, Inc. or Mr. Den-dinger’s father. Consistent with that testimony, the written leases of the- property granted in the 1960s identified the lessor as Mr. Dendinger’s father. The record does not reflect any intent by the Dendinger siblings themselves to possess the property as owners until 1981, when, according to Mr., Dendinger, he and his siblings acquired the property by donations from their parents. After that date, the Den-dinger siblings sold some timber, although very little timber was cut from the area around the landing area. Mr. Dendinger could not recall the date of the timber sale, but he did testify that it was before they granted an oil lease on the property in 1996. ,
Also, in 1996, the -Campbells purchased the property to the north, cleared the disputed property, and began maintaining it. By 2003, the Campbells had constructed a driveway on the property and were using it as the exclusive means of vehicular access .to their property. Then, in 2011, in this proceeding, the Cerdes judicially confessed the Campbells’ possession .of the disputed property. .
The evidence at trial does not provide a reasonable basis for concluding that the Dendinger siblings themselves possessed the disputed property, without Iflinterruption, for thirty years. See La.Civ.Code arts. 3486, 3433, 3434, 3476. At the earliest, their possession began in 1981 and was interrupted in 1996 when the Campbells exercised possession over the disputed property by clearing and eventually using it as a driveway. See Sterling v. Berthelot, 02-921 (La.App. 5 Cir. 1/14/03), 839 So.2d 153, 156 (plaintiff exercised possession of a disputed tract by using it as a driveway for vehicular access to and from her property). To the extent the trial court may have determined that the Den-dinger siblings themselves possessed the *48 disputed property, without interruption, for thirty years, that determination was manifest error.
We next consider the Cerdes’ contention that the Dendinger siblings and their ancestors in title possessed the disputed property for thirty- years without interruption. To maintain this argument, the Cerdes must establish a transfér or “tacking” of the possession of their ancestors in title.
Louisiana Civil Code article 3441 provides that possession can be transferred by universal title or by particular title. The possession of the transferor is tacked to that of the transferee if there has been no interruption of possession. La. Civ.Code art. 3442. Under Articles 3441 and 3442, an essential prerequisite to tacking possession is privity of contract or estate, sometimes referred to as a “juridical link,” to the property to which the possessor asserts- prescriptive title. See Blackstone Investments, LLC, 2011 WL 1938671 at *3; Secret Cove, L.L.C. v. Thomas, 02-2498 (La.App. 1 Cir. 11/7/03), 862 So.2d 1010, 1015-16, writ denied, 04-0447 (La.4/2/04), 869 So.2d 889. In the absence of this juridical link, separate acts of adverse possession are nothing more than a series of independent trespasses, and. on the termination of each of those acts, possession returns by | ^operation of law to the rightful owner of the immovable property. See Thurmon v. Hogg, 225 La. 263, 278-79, 72 So.2d 500, 505 (1954).
Tacking possession is also permitted under Louisiana Civil Code article 794, which appears in the title of the Civil Code that governs boundaries. Although the present proceeding is a petitory action, our courts have consistently recognized that boundary prescriptions may be asserted in title suits, and title prescriptions may be pled in boundary actions. See Ledoux v. Waterbury, 292 So.2d 485, 487 (La.1974); Harry Bourg Corporation v. Punch, 94-1557 (La.App. 1 Cir. 4/7/95), 653 So.2d 1322, 1324; Williams v. Baughman, 477 So.2d 734, 741 (La.App. 1 Cir.), writ denied, 479 So.2d 921 (La.1985).
Article 794 provides in pertinent part:
If á party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds.
Under this article, a title holder may acquire contiguous property that is beyond his title, if he and his ancestors in title possessed the contiguous property that is. beyond his title for thirty years without interruption and within visible bounds, See Hooper v. Wisteria Lakes Subdivision, 13-0050 (La.App. 1 Cir. 9/13/13), 135 So.3d 9, 15, writ not considered, 13-2433 (La.1/27/14), 130 So.3d 954. In contrast to Articles 3441 and 3442, Article 794 allows tacking of possession to property that is beyond the possessor’s title, meaning no juridical link is required to the disputed parcel. See Hooper, 135 So.3d at 15; George M. Murrell Planting & Manufacturing Company, 970 So.2d at 1081; Secret Cove, L.L.C., 862 So.2d at 1015-16. However, the possessor must have some juridical link to “his ancestors in title” ,tq the property that, is contiguous to the disputed parcel. See La. Civ.Code art. 794; Blackstone Investment, LLC, 2011 WL 1938671 at *3; Marks v. Zimmerman Farms, LLC, 44,279 (La.App. 2 Cir. 5/20/09), 13 So.3d 768, 775. Without that juridical link, a party is not entitled to tack the possession of a previous possessor under Article 794.
A juridical -link is therefore an essential element of the burden of proof when a party seeks to tack the possession of a prior possessor under the general prescriptive articles, Articles 3441 and 3442, or *49 under the boundary article, Article 794. As to that requirement, the only distinction is that Articles 3441 and 3442 mandate that the juridical link include the disputed parcel, whereas Article 794 only requires a juridical link to the property that is contiguous to the disputed parcel.
As previously discussed, the Dendinger siblings and the Cerdes do not have sufficient possession between them to establish ownership of the disputed property by thirty.-year acquisitive prescription. As the Campbells point out on appeal, the record is also devoid of any documentary evidence of a juridical link between the Dendinger siblings and any ancestor in title that would allow them to tack the possession of any ancestor in title. The only evidence in the record concerning the prior title to the disputed property or any adjacent parcel is the deposition testimony of Mr. Dendinger, who stated that he thought his family always had a deed to the property, that it was initially owned by Dendinger, Inc., was later transferred to his father, and then was donated to the Dendinger siblings. None of these acts of conveyance were offered into evidence.
This court has not previously addressed the type of evidence necessary to prove a juridical link for purposes of tacking possession. However, it is well settled that a transfer of immovable property must be made by authentic act or by act under private signature. See La. Civ.Code arts. 1839, 2440. The only | ^exception to this requirement is that an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath. See La. Civ.Code art. 1839. Parol evidence is inadmissible to create a title in one who never owned the immovable property or to show that the, vendee was in reality some other person than the person named in the act of sale.. Little v. Haik, 246 La. 121, 135-36, 163 So.2d 558, 564 (1964). Because the law generally prohibits proof of an .interest in immovable property by parol evidence, it is not pecessary that the opposing party-object to the parol evidence — for the law itself reprobates such proof. See Little, 246 La. at 133, 163 So.2d at 563. When the law requires a contract to be in written form, as it does for the conveyance of immovable property, the contract may not be proved by testimony or by présumption, unless the written instrument has been destroyed, lost, or stolen. La. Civ.Code art; 1832; see also Arias v. Stolthaven New Orleans, L.L.C., 08-1111 (La.5/5/09), 9 So.3d 815, 822 (“[W]hen an obligation is based on a writing, prima facie proof of the obligation requires introduction of the writing into evidence.”).
The Cerdes had the burden of proving their ownership, of the disputed parcel. See La.Code Civ. Pro. art. 3653(1). To the extent they relied on prior conveyances to establish their ownership, the Cerdes were obligated to prove those conveyances by competent evidence. In the absence of a stipulation or judicial admission, the only competent evidence of a .written transfer of immovable property is the written instrument or, if the original is recorded, a certified copy thereof. See La. Civ.Code arts. 1832, 1839, 1841; La.Code of Evid. 1005; Little, 246 La. at 136, 163 So.2d at 564. Mr. Dendinger’s deposition testimony, wherein he estimated the dates of the various transfers and what property he believed was 11sincluded in the transfers, was not sufficient to establish the conveyances necessary to prove the required juridical links.
Without competent evidence of juridical links, the acts of adverse possession by Dendinger, Inc.,. Mr. Dendinger’s father, and the Dendinger siblings are nothing more than a series of independent tres *50 passes. See Thurmon, 225 La. at 279, 72 So.2d at 505. Because the Cerdes did not prove the juridical links essential to tack possession, the record does not support a finding that the Dendinger siblings and their ancestors in title possessed the disputed property for thirty years without interruption. Any finding to the contrary by the trial court is manifestly erroneous.
The Cerdes also contend that the evidence supports a finding that they acquired ownership of the disputed parcel by ten-year acquisitive prescription. Ownership of immovable property may be acquired by the prescription of ten years by one who acquires the property in good faith under a just title and possesses it for ten years. See La. Civ.Code arts. 3473, 3475. A just title is a juridical act, such as a sale, exchange, or donation, sufficient to transfer ownership or another real right. La. Civ.Code art. 3483. The record does not reflect any semblance of title to th'e disputed property until the quitclaim conveyance to the Cerdes contained in the 2011 act of sale, Therefore, the ten-year acquisitive prescription available to those who hold title in good faith for that length of time is not applicable. See George M, Murrell Planting & Manufacturing Company, 970 So.2d at 1087. The evidence in the record does not reasonably support a finding of ownership by the Cerdes by ten-year acquisitive prescription, and any finding by the trial court to that effect is manifestly erroneous.
The Cerdes 'assert no other basis that might support the trial court’s finding that they proved their ownership of the disputed property, and the record does not | ^support any other basis. The trial court therefore erred in finding that the Cerdes established their ownership of the disputed property. We reverse the June 9, 2014 amended judgment insofar as it declared the Cerdes to be the owners of the disputed property, and we recognize and restore the Campbells’ possession of that property.
In their final assignment of error, the Campbells contend that the trial court erred in denying their claim for damages. Although the Campbells’ possessory action was converted by the Cerdes to a petitory action, the Cerdes did not prevail in the petitory action. When a defendant files a reconventional demand asserting ownership of disputed property but fails to prove his ownership, the reconventional demand must be dismissed and judgment rendered in the possessory action in favor of the plaintiff. See A.N. Yiannopoulos, 2 La. Civ. L. Treatise, Property § 341, n. 4 (4th ed.2014). A plaintiff who prevails in a possessory action is entitled to a judgment awarding him the damages to which he is entitled and for which he has prayed. La. Code Civ. Pro. art. 3662A(3). Thus, the Campbells were not deprived of their right to recover damages under Article 3662, if sufficiently proven at trial. See Folse v. State, Through Department of Highways, 356 So.2d 411, 414 (La.1978).[2]
*51 11fiThe Campbells allege that they sustained property damages, mental anguish, loss of use, and inconvenience as a result of the disturbance of their possession of the property. The trial court did not reach the issue of the Campbells’ damages after finding that the Cerdes proved ownership of the disputed property. Where the fact finder does not reach an issue because of an earlier finding which disposes of the case, the court of appeal, in reversing the earlier finding, must make a de. novo determination of the undecided issues from the facts in the record. LeBlanc v. Stevenson, 00-0157 (La.10/17/00), 770 So.2d 766, 771-72. Because the judgment was interdicted by error, and the record otherwise appears to be complete, we undertake a de novo review of the evidence to determine whether an award of damages is appropriate.
We first address the Campbells’ claim for property damages. The Campbells presented testimony from a general contractor, Jeremy Mainar, who inspected the disputed property and prepared an estimate for repairing or removing the alterations made by the Cerdes, including installing a culvert, digging a ditch, and replacing the grass. According to Mai-nar, that work will cost $4,590.56 to complete. The Campbells also introduced photographs of the areas of the property that needed this remedial work. The-' Cerdes did not offer any evidence refuting the cost or necessity of this work to restore the property to its prior condition. Accordingly, we award the Campbells, property damages of $4,590.56. See Poirrier v. Dale’s Dozer Service, Inc., 99-2593 (La.App. 1 Cir. 11/3/00), 770 So.2d 531, 538; Louisiana Land and Exploration Company v. Verdin, 95-2579 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, 65-66, writ denied, 96-2629 (La.12/13/96), 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997).
| if,The Campbells also sought recovery for inconvenience and mental anguish. A plaintiff who prevails in a pos-sessory action is entitled to recover damages for inconvenience and mental anguish caused by being wrongfully dispossessed of his property if such 'damages are supported by the evidence. See Pitre v. Tenneco Oil Company, 385 So.2d 840, 849 (La.App. 1 Cir.), writ refused, 392 So.2d 678 (La.1980); McKowen v. McCraine, 244 So.2d 45, 45 (La.App. 1 Cir.1971); Inzer v. Hollis, 339 So.2d 522, 523 (La.App. 2 Cir.1976), writ denied, 341 So.2d 1124 (La.1977); Roge v. Kuhlman, 136 So.2d 819, 824 (La.App. 3 Cir.1962); Sterling, 839 So.2d at 157. An award for such damages provides compensation for the violation of a recognized property right. Roge, 136 So.2d at 824.
The evidence in this case establishes that when the Cerdes acquired the Den-dinger property, their claim to ownership of the disputed property was not without doubt. While the Cerdes claimed the disputed property was acquired in their deed from the Dendingers, that portion of their act of conveyance was by quit-claim, without any warranty, and conveyed only the “right, title, claim and interest which [the vendor] has or may háve in and to the” disputed property. In contrast, the same deed conveyed the adjacent Dendinger property to the Cerdes “with all legal warranties.” The Cerdes also became aware that the Campbell's, believing themselves to be the owners of the disputed property, had built & driveway on the disputed property and used it for many years to access their residence.
Mr. Cerdes asked Mr. Campbell about the southern boundary of the Campbell *52 property. After Mr. Campbell produced a map indicating that his property included the disputed property, Mr. Cerdes retained a surveyor to locate 117and mark the southern boundary of the Campbell property. That survey indicated that the disputed property was not included in the Campbells’ deed.
With that base of knowledge, and without resorting to any judicial process to clarify any rights they may have had to the disputed property, the Cerdes willfully and forcefully, dispossessed the Campbells of the disputed property and prevented them from, using it. At Mr. Cerdes’ direction, an excavator was used to make alterations to the disputed property and to remove a culvert that was necessary for the Campbells to use their driveway. Having forced the Campbells to file this possessory action, the Cerdes then judicially conceded that, in fact, the Campbells had the legal right to possess the disputed property. See La,Code Civ. Pro. art. 3657; Dickerson, 2010 WL 4273178 at *2.'
The extra-judicial actions, by the Cerdes were undertaken based upon their claim to ownership of the disputed property., We have determined that that claim is unsuccessful. The physical dispossession of the Campbells from the disputed property, however, violated the Campbells’ legal right to possess that property. A willful and forceful intrusion of this nature, which prevents a party from exercising a recognized property right, supports an award of at least nominal damages to compensate the victims for the inconvenience and mental anguish associated with the disturbance of their possession. See Roge, 136 So.2d at 824; Sterling, 839 So.2d at 157.
Mr. Campbell described the inconvenience of having to access his residence through an alternate vehicular path, which is configured at an odd angle, impeded by roots, and “not really a driveway.” A pile of dirt where his driveway was dug up and a string marking the property line both serve as a “constant reminder” of his family’s eviction from the property. Mr. Campbell also testified that the | ^alterations to the disputed property adversely affected the drainage on their property and causes their yard to hold water. Mrs. Campbell confirmed that it was aggravating having to use an alternate driveway that is muddy, obstructed by roots, and generally “really nasty.” Based upon our de novo review of the evidence, we award $1,500.00 for inconvenience and mental anguish to the Campbells.
CONCLUSION
We reverse the June 9, 2014 judgment to the extent it (1) declared the disputed property, more fully described on the addendum attached hereto, to be owned by Julius W. Cerdes, Jr. and Duke R. Kent, and (2) denied an award of damages to Elvin A. Campbell, III, and Patti R. Campbell. We recognize and restore the possession of Elvin A. Campbell, III, and Patti R. Campbell to the disputed property and award them $4,590.56 in property damages, and $1,500.00 for inconvenience and' mental anguish against Julius W. Cerdes, Jr., Melissa Poche Cerdes, and Duke R. Kent, in solido, plus legal interest from the date of judicial demand. In all other respects, the judgment of the trial court is affirmed. All costs of this appeal are assessed to Julius W. Cerdes, Jr., Melissa Poche Cerdes, and Duke R. Kent.
APPEAL MAINTAINED; REVERSED IN PART; AFFIRMED IN PART; RENDERED.
|,g ADDENDUM
A strip of land being 50 feet in North and South width by 275 feet in length in East and West length immediately South of the following described property, all in *53 accordance with that certain survey by Mark Thomas Chemay dated December 20, 2010.
A certain piece or parcel of ground located in the Town of Wadesboro, Tangipahoa Parish, Louisiana, being in Section 39, Township 7 South, Range 7 East, more fully described as commencing at the SE comer of Square 1 of the Town of Wadesboro, being the intersection of the West line of Mill Street with the North line of Main Street, running thence North 9 deg. West 275 feet; thence North 13 deg. East 100 feet; thence North 23 deg. East 100 feet; thence North 26 deg. East 100 feet, all along the West side of Mill Street and the Springfield Highway; thence South 44 deg. 50 min. West along Ponchatoula River 462 feet to the North line of Square 1; thence South 77 deg. 25 min. West 50 feet to iron post at Northwest comer of Square 1; thence South 9 deg. East 275 feet to the North line of Main Street; thence North 77 deg. 25 min. East 275 feet to a point of beginning, all as per survey of C.M. Moore, C.E. and Surveyor, dated October 12,1956.

. In response to a rule to show cause issued by this court, the trial court’s judgment was amended by consent of both parties to specifically describe the disputed property as required by Louisiana Code of Civil Procedure articles 1919 and 2089. The amended judgment was filed into the appellate record as a supplement on September 10, 2014. In accordance with the October 7, 2014 action of this court, the appeal is maintained.

. In McCurley v. Burton, 03-1001 (La.App. 1 Cir. 4/21/04), 879 So.2d 186, 191, a prior panel of this court stated that the possessory action asserted by the plaintiff therein was “vacated without prejudice” when the defendant converted the proceeding to a petitory action. While this statement could be construed as inconsistent with the holding in Folse, in fact, McCurley did not hold that a plaintiff is barred from recovering damages in a proceeding commenced as a possessory action but later converted to a petitory action by the defendant. In McCurley, the plaintiff's right to recover damages under Article 3662 was not the subject of the appeal; and, notably, the possessory action was vacated "without prejudice,” an apparent recognition that the plaintiff's right of recovery under Article 3662 was not extinguished by the conversion of the proceeding to a petitory action. McCurley, 879 So.2d at 191. We do not interpret McCurley as a bar to an award of dam *51 ages under the circumstances of this case and adhere to the binding precedent in Folse.